CAROL W. LYNCH (State Bar No. 102149)
City Attorney
City of Rancho Palos Verdes

MITCHELL E. ABBOTT (State Bar No. 64990)
VERONICA S. GUNDERSON (State Bar No. 252128)
RICHARDS, WATSON & GERSHON
A Professional Corporation
355 South Grand Avenue, 40th Floor
Los Angeles, California 90071-3101
Telephone: (213) 626-8484
Facsimile: (213) 626-0078
mabbott@rwglaw.com
vgunderson@rwglaw.com

Attorneys for Defendant and Counter claimant,
*City of Rancho Palos Verdes*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

VH PROPERTY CORP. and VHPS LLC,

Plaintiffs,

v.

CITY OF RANCHO PALOS VERDES; COTTON, SHIRES AND ASSOCIATES, INC.; WILLIAM COTTON; HELENSCHMIDT GEOTECHNICAL, INC.; STANLEY HELENSCHMIDT; GEOKINETICS INC. a/k/a APPLIED GEOKINETICS; GLENN TOFANI; and DOES 1-100, inclusive,

Defendants.

CITY OF RANCHO PALOS VERDES,

Counter claimant,

v.

VH PROPERTY CORP. and VHPS LLC,

Counter defendants.

Case No. CV 2-09-00298-MMM (PJWx)

**ANSWER TO COMPLAINT AND PETITION; AND COUNTERCLAIMS**

[Hon. Margaret M. Morrow, United States District Judge]

Filed: Dec.18, 2008
(L.A. Superior Court No. BC404048)

Removal Filed: January 14, 2009

RICHARDS | WATSON | GERSHON
ATTORNEYS AT LAW – A PROFESSIONAL CORPORATION

RW RICHARDS | WATSON | GERSHON
ATTORNEYS AT LAW – A PROFESSIONAL CORPORATION

Defendant, City of Rancho Palos Verdes, for itself and for no other defendant, answers the Verified Complaint and Petition, filed in the Los Angeles Superior Court on December 18, 2008, and thereafter removed to this Court on January 14, 2009, pursuant to 28 U.S.C. § 1441(b), by admitting, denying, and alleging as follows:

**PARTIES**

1. Defendant has insufficient information or belief on the subject to enable it to admit or deny the allegations contained in paragraph 1 of the Verified Complaint and Petition and, basing its denial upon that ground, defendant denies the allegations contained in paragraph 1.

2. Defendant has insufficient information or belief on the subject to enable it to admit or deny the allegations contained in paragraph 2 of the Verified Complaint and Petition and, basing its denial upon that ground, defendant denies the allegations contained in paragraph 2.

3. Defendant admits and alleges that the City of Ranch Palos Verdes (hereinafter referred to as the "City") is a municipal corporation, duly incorporated and existing under and pursuant to the Constitution and general laws of the State of California, and situated in the County of Los Angeles. Defendant further admits and alleges that it is subject to the in personam jurisdiction of the United States District Court for the Central District of California. Except as specifically admitted, defendant denies the remaining allegations contained in paragraph 3.

4. Defendant admits and alleges that, prior to the time plaintiffs purchased the property which is the subject of this complaint, the City retained Cotton Shires, and Associates ("CSA") as a consulting and geotechnical firm for review of development submissions, including development submissions by VH, pertaining to the subject property after a landslide on the subject property moved and thereby caused approximately eleven acres of property to be displaced. Defendant further admits and alleges that CSA has reviewed and commented upon

said geologic and geotechnical submissions to the City in connection with development of the subject property. Defendant has insufficient information or belief on the subject to enable it to admit or deny the remaining allegations contained in paragraph 4 of the Complaint and Petition and, basing its denial upon that ground, defendant denies the remaining allegations contained in paragraph 4.

5. Defendant admits and alleges that William Cotton is a geologist, a geologic consultant to the City, and is employed by CSA. Except as specifically admitted and alleged, defendant has insufficient information or belief on the subject to enable it to admit or deny the remaining allegations contained in paragraph 5 of the Complaint and Petition and, basing its denial upon that ground, defendant denies the remaining allegations contained in paragraph 5.

6. Defendant admits and alleges that HELENSCHMIDT Geotechincal Inc. ("HGI") has reviewed and commented upon Plaintiffs VH Property, Corp. and VHPS LLC's (collectively "VH") geologic and geotechnical submissions to the City as a subcontractor to CSA in connection with development of the subject property. Defendant has insufficient information or belief on the subject to enable it to admit or deny the remaining allegations contained in paragraph 6 of the Complaint and Petition and, basing its denial upon that ground, defendant denies the remaining allegations contained in paragraph 6.

7. Defendant admits and alleges that Stanley Helenschmidt is a Geotechnical engineer, and is employed by HGI. Except as specifically admitted and alleged, defendant has insufficient information or belief on the subject to enable it to admit or deny the remaining allegations contained in paragraph 7 of the Complaint and Petition and, basing its denial upon that ground, defendant denies the remaining allegations contained in paragraph 7.

8. Defendant admits and alleges that the City retained Geokinetics, Inc., also known as Applied Geokinetics, as a consulting and geotechnical firm for review of VH's development submissions. Defendant further admits and alleges

that Geokinetics, Inc. has reviewed and commented upon VH's geologic and geotechnical submissions to the City in connection with development of the subject property. Defendant has insufficient information or belief on the subject to enable it to admit or deny the remaining allegations contained in paragraph 8 of the Complaint and Petition and, basing its denial upon that ground, defendant denies the remaining allegations contained in paragraph 8.

9. Defendant admits the allegations contained in paragraph 9 of the Complaint and Petition and further alleges that Glenn Tofani provides geotechnical consulting services to the City on other geotechnical matters, in addition to the proposals by VH for development of the subject property.

10. Defendant has insufficient information or belief on the subject to enable it to admit or deny the allegations contained in paragraph 10 of the Complaint and Petition and, basing its denial upon that ground, defendant denies the allegations contained in paragraph 10.

11. Defendant denies the allegations contained in paragraph 11 of the Complaint and Petition.

12. Defendant has insufficient information or belief on the subject to enable them to admit or deny the allegations contained in paragraph 12 of the Complaint and Petition and, basing its denial upon that ground, defendant denies the allegations contained in paragraph 12

13. Defendant has insufficient information or belief on the subject to enable it to admit or deny the allegations contained in paragraph 13 of the Complaint and Petition and, basing its denial upon that ground, defendant denies the allegations contained in paragraph 13.

14. Defendant denies the allegations contained in paragraph 14.

15. Defendant has insufficient information or belief on the subject to enable it to admit or deny the allegations contained in paragraph 15 of the Complaint and Petition and, basing its denial upon that ground, defendant denies

the allegations contained in paragraph 15.

16. Defendant denies the allegations contained in paragraph 16 of the Complaint and Petition and specifically denies that plaintiffs have suffered damages in the amount of $100,000,000, or in any amount whatsoever or at all.

17. Defendant admits and alleges that no claim has been filed with the City pursuant to Government Code Section 945.4 or otherwise. Except as specifically admitted, defendant denies the remaining allegations contained in paragraph 17.

**FIRST CAUSE OF ACTION**

**(Inverse Condemnation – Regulatory Taking)**

18. Defendant repeats its answers to paragraphs 1 through 17, inclusive, and incorporates them herein by this reference as though set forth again in full.

19. Defendant has insufficient information or belief on the subject to enable it to admit or deny the allegations contained in paragraph 19 of the Complaint and Petition and, basing its denial upon that ground, defendant denies the allegations contained in paragraph 19.

20. Defendant admits and alleges that VH has submitted certain permit applications to the City regarding the ficus trees and the Clubhouse Terrace referenced in paragraph 20 (c) and (d) of the Complaint and Petition. Defendant further admits and alleges that VH has not submitted complete permit applications to the City regarding the homes referenced in paragraph 20(a) and (b) of the Complaint and Petition. Except as specifically admitted, defendant denies the remaining allegations contained in paragraph 20.

21. Defendant admits the allegations contained in paragraph 21 of the Complaint and Petition.

22. Defendant admits and alleges that VH has submitted certain permit applications to the City regarding the ficus trees and the Clubhouse Terrace referenced in paragraph 20 (c) and (d) of the Complaint and Petition. Defendant

RWG RICHARDS | WATSON | GERSHON
ATTORNEYS AT LAW – A PROFESSIONAL CORPORATION

further admits and alleges that VH has not submitted complete permit applications to the City regarding the homes referenced in paragraph 20(a) and (b) of the Complaint and Petition. Except as specifically admitted, defendant denies the remaining allegations contained in paragraph 22 of the Complaint and Petition.

23. Defendant admits and alleges that the City approved VH's application for a permit to construct a Clubhouse Terrace on the subject property, as referenced in paragraph 20 (c) of the Complaint and Petition, and further admits and alleges that it denied the application for a permit to maintaining certain ficus trees on the subject property, as referenced in paragraph 20(d) of the Complaint and Petition. Except as specifically admitted, defendant denies the remaining allegations contained in paragraph 23 of the Complaint and Petition.

24. Defendant denies the allegations contained in paragraph 24 of the Complaint and Petition.

25. Defendant admits and alleges that on or before December 23, 2008, the City approved the geological and geotechnical report submitted by VH in connection with its proposal to develop the subject property. Except as specifically admitted, defendant has insufficient information or belief on the subject to enable it to admit or deny the remaining allegations contained in paragraph 25 of the Complaint and Petition and, basing its denial upon that ground, defendant denies the remaining allegations contained in paragraph 25.

26. Defendant denies the allegations contained in paragraph 26 of the Complaint and Petition.

27. Defendant denies the allegations contained in paragraph 27 of the Complaint and Petition.

28. Defendant denies the allegations contained in paragraph 28 of the Complaint and Petition.

29. Defendant denies the allegations contained in paragraph 29 of the Complaint and Petition.

RWG RICHARDS | WATSON | GERSHON
ATTORNEYS AT LAW – A PROFESSIONAL CORPORATION

30. Defendant denies the allegations contained in paragraph 30 of the Complaint and Petition.

31. Defendant denies the allegations contained in paragraph 31 of the Complaint and Petition.

32. Defendant denies the allegations contained in paragraph 32 of the Complaint and Petition.

33. Defendant denies the allegations contained in paragraph 33 of the Complaint and Petition.

34. Defendant admits the allegations contained in paragraph 34 of the Complaint and Petition.

35. Defendant admits and alleges that the application for a permit to develop the Terranea Hotel has been approved subject to numerous conditions of approval. Defendant further admits and alleges that the applications for permits and conditions of approval required may vary substantially from project to project and from property to property, depending upon the unique characteristics of each project and parcel. Except as specifically admitted, defendant denies the remaining allegations contained in paragraph 35 of the Complaint and Petition.

36. Defendant admits and alleges that all parcels of property situated within the city limits of the City of Rancho Palos Verdes that are within residential zones are subject to height restrictions and view preservation conditions. Except as specifically admitted, defendant denies the remaining allegations contained in paragraph 36 of the Complaint and Petition.

37. Defendant admits and alleges that all parcels of property situated within the city limits of the City of Rancho Palos Verdes that are within residential zones are subject to height restrictions and view preservation conditions. Except as specifically admitted, defendant denies the remaining allegations contained in paragraph 37 of the Complaint and Petition.

38. Defendant denies the allegations contained in paragraph 38 of the

RWG RICHARDS | WATSON | GERSHON
ATTORNEYS AT LAW – A PROFESSIONAL CORPORATION

Complaint and Petition.

39. Defendant denies the allegations contained in paragraph 39 of the Complaint and Petition.

40. Defendant denies the allegations contained in paragraph 40 of the Complaint and Petition.

**SECOND CAUSE OF ACTION**

**(Taking of Property for Public Use Without Just Compensation)**

41. Defendant repeats its answers to paragraphs 1 through 16, inclusive, and paragraphs 18 through 39, inclusive, and incorporates them herein by this reference as though set forth again in full.

42. Defendant admits the allegations contained in paragraph 42 of the Complaint and Petition.

43. Defendant denies the allegations contained in paragraph 43 of the Complaint and Petition.

44. Defendant denies the allegations contained in paragraph 44 of the Complaint and Petition.

**THIRD CAUSE OF ACTION**

**(Violation of Due Process – Federal Constitution)**

45. Defendant repeats its answers to paragraphs 1 through 16, inclusive, paragraphs 18 through 29, inclusive, and paragraphs 42 through 43, inclusive, and incorporates them herein by this reference as though set forth again in full.

46. Defendant admits and alleges that CSA, William Cotton, HGI, and Stanley Helenschmidt have conducted geotechnical reviews concerning VH's proposal to develop the subject property, as well as certain other projects within the City. Except as specifically admitted, defendant denies the remaining allegations contained in paragraph 46 of the Complaint and Petition.

47. Defendant admits the allegations contained in paragraph 47 of the

RW|SG RICHARDS | WATSON | GERSHON ATTORNEYS AT LAW – A PROFESSIONAL CORPORATION

Complaint and Petition.

48.   Defendant admits the allegations contained in paragraph 48 of the Complaint and Petition.

49.   Defendant has insufficient information or belief on the subject to enable it to admit or deny the allegations contained in paragraph 49 of the Complaint and Petition and, basing its denial upon that ground, defendant denies the allegations contained in paragraph 49.

50.   Defendant admits the allegations contained in paragraph 50 of the Complaint and Petition.

51.   Defendant has insufficient information or belief on the subject to enable it to admit or deny the allegations contained in paragraph 51 of the Complaint and Petition and, basing its denial upon that ground, defendant denies the allegations contained in paragraph 51.

52.   Defendant has insufficient information or belief on the subject to enable it to admit or deny the allegations contained in paragraph 52 of the Complaint and Petition and, basing its denial upon that ground, defendant denies the allegations contained in paragraph 52.

53.   Defendant denies the allegations contained in paragraph 53 of the Complaint and Petition.

54.   Defendant denies the allegations contained in paragraph 54 of the Complaint and Petition.

55.  Defendant denies the allegations contained in paragraph 55 of the Complaint and Petition.

56.   Defendant denies the allegations contained in paragraph 56 of the Complaint and Petition.

57.   Defendant admits and alleges that CSA, William Cotton, HGI, and Stanley Helenschmidt have performed consulting geological and geotechnical services in connection with VH's proposal to develop the subject property, and

RICHARDS | WATSON | GERSHON
ATTORNEYS AT LAW – A PROFESSIONAL CORPORATION

further admits and alleges that VH has paid for some or all of the charges for those services. Except as specifically admitted, defendant denies the remaining allegations contained in paragraph 57 of the Complaint and Petition.

58. Defendant admits and alleges that Glenn Tofani testified as one of the City's principal experts in *Monks v. City of Rancho Palos Verdes*, Los Angeles Superior Court No. YS010425. Except as specifically admitted, defendant denies the remaining allegations contained in paragraph 58 of the Complaint and Petition.

59. Defendant denies the allegations contained in paragraph 59 of the Complaint and Petition.

60. Defendant admits the allegations contained in paragraph 60 of the Complaint and Petition, and further alleges that in its processing and review of VH's development applications, it has complied fully with all requirements of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

61. Defendant denies the allegations contained in paragraph 61 of the Complaint and Petition.

**FOURTH CAUSE OF ACTION**

**(Violation of Due Process – California Constitution)**

62. Defendant repeats its answers to paragraphs 1 through 39, inclusive, and paragraphs 42 through 60, inclusive, and incorporates them herein by this reference as though set forth again in full.

63. Defendant admits the allegations contained in paragraph 63 of the Complaint and Petition, and further alleges that in its processing and review of VH's development applications, it has complied fully with all requirements of the Due Process Clause of the California Constitution.

64. Defendant denies the allegations contained in paragraph 64 of the Complaint and Petition.

RWG RICHARDS | WATSON | GERSHON
ATTORNEYS AT LAW – A PROFESSIONAL CORPORATION

**FIFTH CAUSE OF ACTION**

**(Violation of Equal Protection – Federal Constitution)**

65. Defendant repeats its answers to paragraphs 1 through 39, inclusive, and paragraphs 42 through 60, inclusive, and incorporates them herein by this reference as though set forth again in full.

66. Defendant denies the allegations contained in paragraph 66 of the Complaint and Petition.

67. Defendant denies the allegations contained in paragraph 67 of the Complaint and Petition.

**SIXTH CAUSE OF ACTION**

**(Violation of Equal Protection – California Constitution)**

68. Defendant repeats its answers to paragraphs 1 through 39, inclusive, paragraphs 42 through 60, inclusive, and paragraph 66, and incorporates them herein by this reference as though set forth again in full.

69. Defendant denies the allegations contained in paragraph 69 of the Complaint and Petition.

**SEVENTH CAUSE OF ACTION**

**(Fraud)**

70. Defendant repeats its answers to paragraphs 1 through 39, inclusive, paragraphs 42 through 50, inclusive, and paragraph 66, and incorporates them herein by this reference as though set forth again in full.

71. Defendant admits the allegations contained in paragraph 71 of the Complaint and Petition, and further alleges that VH's development applications were in fact evaluated fairly by the City and in full compliance with all applicable laws.

72. Defendant has insufficient information or belief on the subject to

RW|G RICHARDS | WATSON | GERSHON
ATTORNEYS AT LAW – A PROFESSIONAL CORPORATION

enable it to admit or deny the allegations contained in paragraph 72 of the Complaint and Petition and, basing its denial upon that ground, defendant denies the allegations contained in paragraph 72.

73. Defendant admits and alleges that VH expended substantial sums of money on the applications and on the studies and reviews required for the applications. Except as specifically admitted, defendant has insufficient information or belief on the subject to enable it to admit or deny the remaining allegations contained in paragraph 73 of the Complaint and Petition and, basing its denial upon that ground, defendant denies the remaining allegations contained in paragraph 73.

74. Defendant denies the allegations contained in paragraph 74 of the Complaint and Petition.

75. Defendant denies the allegations contained in paragraph 75 of the Complaint and Petition.

76. Defendant admits and alleges that all of VH's applications were fairly evaluated by the City, and in compliance with all applicable laws. Except as specifically admitted, defendant denies the remaining allegations contained in paragraph 76 of the Complaint and Petition.

77. Defendant denies the allegations contained in paragraph 77 of the Complaint and Petition.

78. Defendant denies the allegations contained in paragraph 78 of the Complaint and Petition and specifically denies that VH has been damaged in any amount whatsoever, or at all.

79. Defendant denies the allegations contained in paragraph 79 of the Complaint and Petition.

RW RICHARDS | WATSON | GERSHON
ATTORNEYS AT LAW – A PROFESSIONAL CORPORATION

**EIGHTH CAUSE OF ACTION**

**(Breach of Contract – Third Party Beneficiary)**

80. Defendant repeats its answers to paragraphs 1 through 39, inclusive, paragraphs 42 through 60, inclusive, paragraph 66, and paragraphs 71 through 78, inclusive, and incorporates them herein by this reference as though set forth again in full.

81. Defendant admits the allegations contained in paragraph 81 of the Complaint and Petition.

82. Defendant admits and alleges that on or about September 2, 2003, the City and VH entered into a written agreement entitled "Agreement between the City of Rancho Palos Verdes and V.H. Properties, Corporation" whereby the parties agreed to leave review of all geotechnical and geologic conditions affecting Tentative Tract Map No. 50666 to a panel of three impartial geological/geotechnical experts. A true and correct copy of that agreement is attached hereto as Exhibit "A" and hereby incorporated by this reference as though set forth fully herein. Defendant further admits and alleges that on or about July 14, 2004, the City and Plaintiffs entered into a written agreement entitled "Second Agreement between the City of Rancho Palos Verdes and V.H. Properties, Corporation Regarding Geologic Issues." A true and correct copy of that agreement is attached hereto as Exhibit "B" and hereby incorporated by this reference as though set forth fully herein. Except as specifically admitted, defendant denies the remaining allegations of paragraph 82 of the Complaint and Petition, and specifically denies that VH was or is a "third-party beneficiary" to the contracts described herein.

83. Defendant denies the allegations contained in paragraph 83 of the Complaint and Petition.

84. Defendant denies the allegations contained in paragraph 84 of the Complaint and Petition.

RWG RICHARDS | WATSON | GERSHON ATTORNEYS AT LAW – A PROFESSIONAL CORPORATION

85. Defendant denies the allegations contained in paragraph 85 of the Complaint and Petition.

**NINTH CAUSE OF ACTION**

**(Breach of Implied Covenant of Good Faith and Fair Dealing)**

86. Defendant repeats its answers to paragraphs 1 through 39, inclusive, paragraphs 42 through 60, inclusive, paragraph 66, paragraphs 71 through 78, inclusive, and paragraphs 81 through 84, inclusive, and incorporates them herein by this reference as though set forth again in full.

87. This answering defendant admits and alleges that it has evaluated and reviewed VH's development applications fairly and in good faith, and in full compliance with all applicable laws. Except as specifically admitted, defendant has insufficient information or belief on the subject to enable it to admit or deny the remaining allegations contained in paragraph 87 of the Complaint and Petition and, basing its denial upon that ground, defendant denies the remaining allegations contained in paragraph 87.

88. Defendant denies the allegations contained in paragraph 88 of the Complaint and Petition.

**TENTH CAUSE OF ACTION**

**(Unjust Enrichment)**

89. Defendant repeats its answers to paragraphs 1 through 39, inclusive, paragraphs 42 through 60, inclusive, paragraph 66, paragraphs 71 through 78, inclusive, and paragraphs 81 through 84, inclusive, and paragraph 87, and incorporates them herein by this reference as though set forth again in full.

90. Defendant denies the allegations contained in paragraph 90 of the Complaint and Petition.

91. Defendant denies the allegations contained in paragraph 91 of the

RWG RICHARDS | WATSON | GERSHON ATTORNEYS AT LAW – A PROFESSIONAL CORPORATION

Complaint and Petition and specifically denies that it is liable to plaintiffs in any amount whatsoever or at all.

## ELEVENTH CAUSE OF ACTION

**(Intentional Interference with Prospective Economic Advantage)**

92. Defendant repeats its answers to paragraphs 1 through 39, inclusive, paragraphs 42 through 60, inclusive, paragraph 66, paragraphs 71 through 78, inclusive, and paragraphs 81 through 84, inclusive, and paragraph 87, and incorporates them herein by this reference as though set forth again in full.

93. Defendant denies the allegations contained in paragraph 93 of the Complaint and Petition.

94. Defendant denies the allegations contained in paragraph 94 of the Complaint and Petition.

95. Defendant denies the allegations contained in paragraph 95 of the Complaint and Petition.

96. Defendant denies the allegations contained in paragraph 96 of the Complaint and Petition.

97. Defendant denies the allegations contained in paragraph 97 of the Complaint and Petition.

98. Defendant denies the allegations contained in paragraph 98 of the Complaint and Petition and specifically denies that plaintiffs have been damaged in any amount whatsoever or at all.

99. Defendant denies the allegations contained in paragraph 99 of the Complaint and Petition.

100. Defendant denies the allegations contained in paragraph 100 of the Complaint and Petition and specifically denies that plaintiffs have been damaged in any amount whatsoever or at all.

RWG RICHARDS | WATSON | GERSHON ATTORNEYS AT LAW – A PROFESSIONAL CORPORATION

RW|SG RICHARDS | WATSON | GERSHON
ATTORNEYS AT LAW – A PROFESSIONAL CORPORATION

**TWELFTH CAUSE OF ACTION**

**(Unfair Business Practices)**

101. Defendant repeats its answers to paragraphs 1 through 39, inclusive, paragraphs 42 through 60, inclusive, paragraph 66, paragraphs 71 through 78, inclusive, paragraphs 81 through 84, inclusive, paragraph 87, and paragraphs 93 through 99, inclusive, and incorporates them herein by this reference as though set forth again in full.

102. Defendant denies the allegations contained in paragraph 102 of the Complaint and Petition.

103. Defendant denies the allegations contained in paragraph 103 of the Complaint and Petition.

**THIRTEENTH CAUSE OF ACTION**

**(Petition for Writ of Mandate)**

104. Defendant repeats its answers to paragraphs 1 through 39, inclusive, paragraphs 42 through 60, inclusive, paragraph 66, paragraphs 71 through 78, inclusive, paragraphs 81 through 84, inclusive, paragraph 87, and paragraphs 93 through 99, inclusive, and incorporates them herein by this reference as though set forth again in full.

105. Defendant denies the allegations contained in paragraph 105 of the Complaint and Petition.

106. Defendant denies the allegations contained in paragraph 106 of the Complaint and Petition.

**FIRST AFFIRMATIVE DEFENSE**

**(Failure to State a Claim on Which Relief Can Be Granted)**

107. As and for a separate and independent affirmative defense, defendant alleges that the Complaint and Petition, and each and every purported cause of

action contained therein, fails to state a claim upon which relief can be granted.

**SECOND AFFIRMATIVE DEFENSE**

**(Failure to Exhaust Administrative Remedies)**

108. As and for a further, separate, and independent affirmative defense, defendant alleges that plaintiffs have failed to avail themselves of, and to exhaust, administrative remedies available to them under the provisions of the Rancho Palos Verdes Municipal Code, and this court is therefore without jurisdiction to hear this case by reason of the judicial doctrine of exhaustion of administrative remedies.

**THIRD AFFIRMATIVE DEFENSE**

**(No Custom or Policy of Violating Civil Rights)**

109. As and for a further, separate, and independent affirmative defense, defendant alleges that the actions complained of were not the result or manifestation of any custom or policy of the City of Rancho Palos Verdes and therefore cannot establish plaintiffs' entitlement to relief under the Civil Rights Act of 1871, 42 U.S.C. § 1983.

**FOURTH AFFIRMATIVE DEFENSE**

**(Good Faith Immunity)**

110. As and for a further, separate, and independent affirmative defense, defendant alleges that at all times herein mentioned the City and its agents acted in good faith, without malice, and within the scope of their respective duties as public employees of the City of Rancho Palos Verdes and the City and its agents are therefore immune from liability for any claim under the Civil Rights Act of 1871, 42 U.S.C. §1983.

RICHARDS | WATSON | GERSHON
ATTORNEYS AT LAW – A PROFESSIONAL CORPORATION

**FIFTH AFFIRMATIVE DEFENSE**

**(Privilege - Civil Code § 47)**

111. As and for a further, separate, and independent affirmative defense, defendant alleges that all actions alleged in the Complaint and Petition to have been taken by or on behalf of the City were and are absolutely or conditionally privileged pursuant to California Civil Code Section 47, and cannot form the basis of a claim for relief against the City under the laws of the State of California.

**SIXTH AFFIRMATIVE DEFENSE**

**(State Law Immunities - Government Code § 818.4 )**

112. As and for a further, separate, and independent affirmative defense, defendant alleges that the City of Rancho Palos Verdes is not liable under any state law claim for any injury or damages allegedly caused by the failure or refusal to issue a permit, pursuant to Government Code Section 818.4.

**SEVENTH AFFIRMATIVE DEFENSE**

(Ripeness)

113. As and for a further, separate, and independent affirmative defense, defendant alleges that plaintiffs have failed and refused to apply for permits or other entitlements to construct homes on the site of the present driving range on the subject property in accordance with the provisions of the Rancho Palos Verdes Municipal Code, and the claims set forth in plaintiffs' complaint with respect to that proposed development are therefore not ripe for judicial determination.

**EIGHTH AFFIRMATIVE DEFENSE**

**(Statute of Limitations)**

114. As and for a further, separate, and independent affirmative defense, defendant is informed and believes and thereupon alleges that the acts and

RICHARDS | WATSON | GERSHON
ATTORNEYS AT LAW – A PROFESSIONAL CORPORATION

administrative decisions complained of in the Complaint and Petition occurred more than one year prior to the filing of the complaint and plaintiffs' claims are barred by reason of plaintiffs' failure to commence this proceeding within the period of limitations specified in Government Code sections 66499.37, 65009, Code of Civil Procedure sections 338, 339, 340, 342, 343, and 1094.6(b) and other applicable statutes.

**NINTH AFFIRMATIVE DEFENSE**

**(Absolute Privilege – *Noerr-Pennington* Doctrine)**

115. As and for a further, separate, and independent affirmative defense, defendant is informed and believes and thereupon alleges that the statements and actions alleged in the Complaint and Petition were all absolutely privileged under the First Amendment to the United States Constitution and that all such claims are therefore barred by the ***Noerr-Pennington*** doctrine.

**TENTH AFFIRMATIVE DEFENSE**

**(Adequate Remedy at Law)**

116. As and for a further, separate and independent affirmative defense, respondent alleges that plaintiffs have at all times had an adequate remedy at law, namely, the filing of applications for entitlements to develop the subject property and, if said applications are denied, a petition for writ of mandate in the Superior Court pursuant to the provisions of the California Government Code, and accordingly, plaintiffs are not entitled to a peremptory writ of mandate under the provisions of Code of Civil Procedure Sections 1085 and 1094.5.

**ELEVENTH AFFIRMATIVE DEFENSE**

**(No Regulatory Taking of Property)**

117. As and for a further, separate, and independent affirmative defense,

RICHARDS | WATSON | GERSHON
ATTORNEYS AT LAW – A PROFESSIONAL CORPORATION

defendant alleges that plaintiffs are presently making productive economic use of the subject property and plaintiffs therefore have suffered no regulatory taking of their property as a result of any actions taken by the City, that plaintiffs have not been deprived of all economically beneficial or productive use of their property, and that accordingly, the City is not liable to plaintiffs on a theory of inverse condemnation or regulatory taking.

**WHEREFORE**, defendant, City of Rancho Palos Verdes, prays judgment as set forth below.

## COUNTERCLAIMS

Defendant and Counter-claimant, City of Rancho Palos Verdes, alleges as follows:

118. Plaintiffs' lawsuit was originally filed in the Los Angeles Superior Court (Docket No. BC404048), on December 18, 2008. On January 14, 2009, the City removed the case to this Court pursuant to 28 U.S.C. §1441(b).

## DEFENDANT RANCHO PALOS VERDES' FIRST COUNTERCLAIM

**(Breach of Contract Against All Plaintiffs)**

119. On or about September 2, 2003, the City and Plaintiffs entered into a written agreement entitled "AGREEMENT BETWEEN THE CITY OF RANCHO PALOS VERDES AND V.H. PROPERTIES, CORPORATION" whereby the parties agreed to leave review of all geotechnical and geologic conditions effecting Tentative Tract Map No. 50666 to a panel of three impartial geological/geotechnical experts. A true and correct copy of that agreement is attached hereto as Exhibit "A" and hereby incorporated by this reference as though set forth fully herein.

120. Plaintiffs are the owners of certain real property encompassed within

Tentative Tract Map No. 50666, which is the subject of the September 2, 2003 Agreement. The subject property is generally located at 1 Ocean Trials Drive, Rancho Palos Verdes, California.

121. The subject property encompasses three landslide areas. The public safety, health, and welfare require that the geological and geotechnical conditions of the subject property be thoroughly analyzed and addressed before construction may safely proceed.

122. Section 8 of the September 2, 2003 Agreement expressly states that Plaintiffs and the City "agree that any decisions and recommendations rendered by the Panel shall be binding on both City and Developer, including, but not limited to: (i) any decisions supporting, or disagreeing with, the recommendations or conclusions of one Party's experts; and (ii) any conclusions or recommendations arrived at independently by the Panel, including any recommendations regarding additional studies, borings, or analysis to be performed or improvements to be constructed."

123. Section 8 of the September 2, 2003 Agreement also expressly states that the "Agreement shall inure to the benefit of and bind the Parties to this Agreement and each of their respective heirs, assigns and successors in interest."

124. Pursuant to Section 9 of the September 2, 2003 Agreement, the City and Plaintiffs covenanted and agreed "not to sue the Panel or any of its individual members for any advice, opinions, conclusions, or recommendations the Panel makes with respect to the geological and geotechnical conditions underlying the Property and the stability of the proposed residential sites."

125. The City has fully performed its obligations, and adhered to the terms of the written agreement.

126. Plaintiffs breached the terms of the September 2, 2003 written agreement by filing Los Angeles Superior Court Case No. BC 404048, now Untied States District Court Case No. CV 2-09-00298, which challenges the

RICHARDS | WATSON | GERSHON
ATTORNEYS AT LAW – A PROFESSIONAL CORPORATION

advice, opinions, conclusions, or recommendations the Panel made with respect to the geological and geotechnical conditions underlying the subject property and the stability of the proposed residential sites.

127. Plaintiffs' failure to abide by the terms of the September 2, 2003 written agreement has caused the City to incur attorneys' fees and costs to defend against the present lawsuit.

**DEFENDANT RANCHO PALOS VERDES' SECOND COUNTERCLAIM**

**(Breach of Contract as to All Plaintiffs)**

128. The City repeats the allegations contained in paragraphs 5 through 13 of this Counterclaim and incorporates them herein by this reference as though set forth again in full.

129. On or about July 14, 2004, the City and Plaintiffs entered into a written agreement entitled "SECOND AGREEMENT BETWEEN THE CITY OF RANCHO PALOS VERDES AND V.H. PROPERTIES, CORPORATION REGARDING GEOLOGIC ISSUES." A true and correct copy of that agreement is attached hereto as Exhibit "B" and incorporated herein by this reference as though set forth in full again.

130. Plaintiffs are the owners of certain real property encompassed within Tentative Tract Map No. 50666, which is the subject of the July 14, 2004, Agreement. The subject property is generally located at 1 Ocean Trials Drive, Rancho Palos Verdes, California.

131. The subject property encompasses three landslide areas. The public safety, health, and welfare require that the geological and geotechnical conditions of the subject property be thoroughly analyzed and addressed before construction may safely proceed.

132. The City and Plaintiffs entered into the July 14, 2004 Agreement so that the panel of experts could resolve additional disputes between the City's

geological and geotechnical experts and the experts performing work on behalf of Plaintiffs.

133. Pursuant to Section 7 of the July 14, 2004 Agreement, the City and Plaintiffs covenanted and agreed "not to sue the Panel or any of its individual members for any advice, opinions, conclusions, or recommendations the Panel makes with respect to the geological and geotechnical conditions underlying the Property and the stability of the Property for development."

134. Section 8A of the July 14, 2004 Agreement expressly states that Plaintiffs and the City agree that any decisions rendered by the Panel regarding geologic or geotechnical issues "shall be binding on both City and Developer, including, but not limited to: (i) any decisions supporting, or disagreeing with, the recommendations or conclusions of one Party's experts; and (ii) any conclusions or recommendations arrived at independently by the Panel, including any recommendations regarding additional studies, borings, or analysis to be performed or improvements to be constructed, in response to the Scope of Work or other scope of work or written instructions prepared jointly by the Parties."

135. Section 8B of the July 14, 2004 Agreement also expressly states that the "Agreement shall inure to the benefit of and bind the Parties to this Agreement and each of their respective heirs, assigns and successors in interest."

136. The City has fully performed its obligations, and adhered to the terms of the written agreement.

137. Plaintiffs breached the terms of the July 14, 2004 written agreement by filing Los Angeles Superior Court Case No. BC 404048, now United States District Court Case No. CV 2-09-00298, which challenges the advice, opinions, conclusions, or recommendations the Panel made with respect to the geological and geotechnical conditions underlying the Property and the stability of the Property for development.

138. Plaintiffs' failure to abide by the terms of the July 14, 2004 written

RW|SG RICHARDS | WATSON | GERSHON ATTORNEYS AT LAW – A PROFESSIONAL CORPORATION

agreement has caused the City to incur attorneys' fees and costs to defend against the instant action.

**WHEREFORE**, Defendant prays judgment as follows:

1. That plaintiffs, VH Property Corp. and VHPS LLC, take nothing by their complaint and that judgment be entered in favor of defendant, City of Rancho Palos Verdes;

2. That defendant have and recover from plaintiffs its costs of suit herein, including reasonable attorney's fees to the extent allowed by law or contract;

3. That Plaintiffs, VH Property Corp. and VHPS LLC, and each of them, be held in breach of the written agreement between the parties entered into on or about September 2, 2003;

4. That Plaintiffs, VH Property Corp. and VHPS LLC, and each of them, be held in breach of the written agreement between the parties entered into on or about July 14, 2004;

5. That the City recover from Plaintiffs its costs of suit herein, including attorney's fees pursuant to the two written agreements; and

6. That the Court order such other relief as may seem just in the circumstances.

Dated: February 2, 2009

CAROL W. LYNCH
City Attorney
City of Rancho Palos Verdes

MITCHELL E. ABBOTT
VERONICA S. GUNDERSON
RICHARDS, WATSON & GERSHON
A Professional Corporation

By: [signature]
Mitchell E. Abbott
Attorney for Defendant and Counter claimant,
*City of Rancho Palos Verdes*

RWG RICHARDS | WATSON | GERSHON
ATTORNEYS AT LAW – A PROFESSIONAL CORPORATION

# EXHIBIT A

EXHIBIT A

- City Copy

AGREEMENT BETWEEN THE CITY OF
RANCHO PALOS VERDES AND V.H. PROPERTIES, CORPORATION

THIS AGREEMENT is made and entered this 2nd day of September 2003, by and between the City of Rancho Palos Verdes, a California municipal corporation ("City") and V.H. Properties, Corporation ("Developer"). City and Developer are sometimes referred to singularly herein as "Party" and collectively as the "Parties."

RECITALS

A. Developer is the owner of that certain real property encompassed within Tentative Tract Map No. 50666, a portion of which is proposed for single-family residential development (the "Property"). The Property is part of a larger development, which is owned by Developer and is generally located at 1 Ocean Trails Drive, Rancho Palos Verdes, California, commonly known as the Ocean Trails Project ("Ocean Trails"). Ocean Trails consists of a 258-acre site bounded by Palos Verdes Drive South on the north, the Portuguese Bend Club on the west, the Pacific Ocean on the south and Shoreline Park on the east.

B. City approved various applications for the Ocean Trails project to allow the construction of a Residential Planned Development of 75 single family dwelling units and the development of an 18-hole golf course with associated clubhouse and parking facilities.

C. The Property encompasses three landslide areas. Because portions of the Property that are being developed for residential purposes may be affected by one or more landslides on the Property, the public safety, health and welfare require that the geological and geotechnical conditions of the Property be thoroughly analyzed and addressed before construction of the proposed residences may proceed.

D. City and Developer have each retained experts to analyze the geological conditions that underlie the site of the proposed residential units and to make recommendations regarding the potential development of the Property. However, given the inherent complexity of the geology on the Property and the inherent subjectivity of the science of geology, the Parties' respective experts have not always agreed on the geologic conditions on the Property or the actions that are necessary to achieve a factor of safety of at least 1.5 for the development of the residential lots.

E. In the past, the Parties have found it useful to utilize a three-member panel of independent experts to review the geological and geotechnical data for the Ocean Trails Project in order to resolve any differences between the Parties' respective experts. However, the former panel of experts did not provide the definitive guidance desired by either City or Developer regarding the development of the residential lots in Tentative Tract 50666. Accordingly, City and Developer desire to form a new three-member panel (the "Panel") to resolve any disputes regarding the geotechnical and geological issues affecting the Property.

F. City and Developer desire to cooperate to select three new geological/geotechnical experts to comprise the Panel. City and Developer further desire to enter into this Agreement to memorialize their understanding with respect to this subject matter and their commitment to proceed with the review of the geotechnical and geological conditions of the Property and to be bound by the recommendations and conclusions of the Panel.

NOW, THEREFORE, in consideration of the mutual promises, obligations and covenants hereinafter set forth, the Parties hereto agree as follows:

Section 1. Incorporation of Recitals. Each and every recital set forth above is hereby incorporated by this reference as though set forth in full and expressly made a part of this Agreement.

Section 2. Selection of Panel Experts. City and Developer hereby agree that the three experts who will be members of the Panel will be selected as follows: City and Developer each shall provide a list of experts who are eligible for selection to the panel. Each Party shall have the right to veto any expert included on the other party's list. Each Party shall select one geologist from the other party's approved list to participate on the Panel. The two geologists who have been selected to participate on the Panel are set forth on Exhibit A, which is attached hereto and incorporated herein by this reference. These two geologists then shall select the third expert from a list of geotechnical engineers who have been approved by both Parties pursuant to the process set forth in this Section 2. The final list of individuals who will comprise the three-member Panel are set forth on Exhibit B to this Agreement, which is attached hereto and incorporated herein by this reference.

Section 3. Impartial Review. The Parties hereby acknowledge and agree that although City shall retain the three experts who will comprise the Panel, the Panel shall be charged with providing an impartial analysis of the geological and geotechnical data related to the Property and to resolve disagreements between City's geological and geotechnical experts and the experts that are performing work on behalf of Developer. The Parties further acknowledge and agree that the Panel shall be instructed not to meet, either individually or as a panel, privately with either the City, its geologists or its geotechnical engineers or the Developer, its geologists or its geotechnical engineers. City and Developer further agree that: (i) City and Developer shall limit their contact with the Panel to times when both Parties are present; (ii) City and Developer shall have equal input into the Panel's performance of its impartial review; and (iii) City and Developer shall provide joint instructions to the Panel. However, nothing in this Section 3 shall be construed to prevent the members of the Panel from meeting with one another privately to discuss the geological and geotechnical data, nor shall this Section 3 prevent the Panel from seeking additional input from the Parties, so long as such requested input shall be either communicated to the City and the Developer in a meeting at which both parties are present or in writing, which is provided to both Parties simultaneously.

Section 4. Compensation for Panel. Upon execution of this Agreement, Developer shall deposit with the City the sum of $25,000. City shall hold these funds in a trust account established for the purpose of compensating the members of the Panel for their services rendered

pursuant to this Agreement. When the balance in the trust account drops below $5,000, City shall notify Developer and request additional funds. Developer shall deposit such additional funds with City within ten (10) business days of receipt of the written request from the City. Notwithstanding the immediately preceding sentence, Developer shall not be in default hereunder if it fails to deposit such additional funds with City, but either party shall have the right to terminate this Agreement if Developer fails to deposit such additional funds with City, all as more specifically set forth in Section 5 below. Nothing herein shall be construed to permit Developer to fail to reimburse City for work that already has been performed by the Panel.

Section 5. Termination. If Developer fails to deposit any additional funds contemplated by Section 4 above or Section 8 below, then Developer shall not be default hereunder, but either Developer or City shall have the right to terminate this Agreement by providing at least thirty (30) days advance written notice to the other Party. Additionally, if Developer sells or otherwise transfers substantially all of the residential property contained within Tentative Tract Map No. 50666 to a person or entity that is not affiliated with or related to Developer, then Developer shall have the right to terminate this Agreement by providing at least thirty (30) days advance written notice to the City. If this Agreement is terminated priór to the resolution of the geologic issues concerning the Property, the members of the Panel shall be compensated for the work that has been performed as provided in Section 4, and City again shall use its standard process of having its geologists and geotechnical engineers review the reports and recommendations of the Developer's experts. Developer further acknowledges that if this Agreement is terminated prior to the resolution of the geologic issues concerning the Property, Developer shall not have the right to rely on this Agreement, that the issue of the developability of the residential lots in Tract 50666 may not have been resolved to City's satisfaction, and that City shall not be bound by this Agreement.

Section 6. Scope of Panel's Review. The focus of the Panel is to determine the stability of the residential portions of Tract 50666 and whether those lots are impacted by the geological and geotechnical conditions of Landslide A. However, City and Developer hereby acknowledge and agree not to restrict the areas that the Panel may explore to make such determination and to defer to the judgment of the Panel with respect to what additional geologic studies and tests, if any, should be conducted and what additional changes or improvements, if any, should be incorporated into the Project in order to permit such residential development.

Section 7. Hold Harmless and Covenant not to Sue. The Parties hereby acknowledge that the Panel is being retained to resolve differences between the respective geological/ geotechnical experts retained by the Parties in order to allow Developer to complete the development of the Project, and that the Panel is solely providing impartial analysis and recommendations based on their combined professional judgment and are not preparing geotechnical designs for any future residential structures on those lots or insuring that the stability is sufficient to safely support such structures. The Parties further acknowledge that the members of the Panel are not in any way interested in the development of the Property, either financially or otherwise, and would not provide the advice contemplated by this Agreement absent assurances by the Parties that they will not sue the Panel or its individual members based on the advice provided. Accordingly, City and Developer hereby covenant and agree not to sue the Panel or any of its individual members for any advice, opinions, conclusions or

recommendations the Panel makes with respect to the geological and geotechnical conditions underlying the Property and the stability of the proposed residential sites. Developer further agrees to indemnify, defend and hold the Panel and each member thereof harmless from any claims, losses, costs or damages that results from geological instability on the Property. The members of the Panel are third party beneficiaries of this Agreement, and the provisions of this Section 7 shall also run to the benefit of the members of the Panel as if made directly to them. This Covenant shall survive the termination of this Agreement.

Section 8. Covenant to be Bound. City and Developer hereby covenant and agree that any decisions and recommendations rendered by the Panel shall be binding on both City and Developer, including, but not limited to: (i) any decisions supporting, or disagreeing with, the recommendations or conclusions of one Party's experts; and (ii) any conclusions or recommendations arrived at independently by the Panel, including any recommendations regarding additional studies, borings or analysis to be performed or improvements to be constructed. The Parties further agree to take all steps reasonably necessary to diligently pursue and implement the recommendations of the Panel. Notwithstanding the foregoing, Developer shall not be in default hereunder if Developer elects not to incur any additional cost or expense as a result of any such recommendations provided that, in such event, either Party shall have the right to terminate this Agreement as more specifically provided in Section 5 above. This Agreement shall inure to the benefit of and bind the Parties to this Agreement and each of their respective heirs, assigns and successors in interest. Nothing herein shall be construed to grant the Panel any authority to obligate the City to incur any expense whatsoever; and except as expressly provided herein, nothing herein shall be construed to grant the Panel any authority to obligate the Developer to incur any expense whatsoever.

Section 9. Further Assurance. Each Party hereto agrees to take such actions, and to execute such certificates and other instruments, as may be necessary or appropriate to give effect to and carry out the provisions of this Agreement.

Section 10. Integration and Amendment.

10.1 This Agreement, and any documents incorporated herein by specific reference, represents the entire and integrated agreement between Developer and City with respect to the subject matter hereof. This Agreement supersedes all prior negotiations, representations or agreements, whether oral or written.

10.2 This Agreement may not be amended, modified, or expanded except by a written instrument signed by each of the Parties hereto.

10.3 The City has entered into an agreement with each of the members of the Panel. Those three agreements are attached hereto as Exhibits C, D, and E and are incorporated herein by this reference, and shall not be amended without Developer's prior written consent. This Agreement shall not be amended, terminated or

otherwise modified without thirty days advance written notice first being provided to all of the members of the Panel.

Section 11. Assignment. Neither Party shall assign its interest in this Agreement, or any portion of this Agreement, without the prior written consent of the other Party, which consent shall not be unreasonably withheld. Notwithstanding the foregoing, Developer shall have the right to assign this Agreement to any person or entity to whom Developer sells substantially all of the residential portions of Tentative Tract Map No. 50666 provided that at least fifteen days prior to the effective date of such assignment, Developer shall give written notice thereof to City, and provided, further, that Developer shall deliver to City a copy of the proposed assignment and assumption agreement for City's review and approval, which shall not be unreasonably withheld, and Developer shall deliver a copy of the executed assignment and assumption agreement, in the form approved by the City, prior to the effective date of the assignment.

Section 12. Interpretation. This Agreement is deemed to have been prepared by both of the Parties hereto, after consulting with legal counsel, and any uncertainty or ambiguity herein shall not be interpreted against the drafter, but rather, if such ambiguity or uncertainty exists, shall be interpreted according to the applicable rules of interpretation of contracts under the law of the State of California.

Section 13. Governing Law. This Agreement shall be construed and enforced in accordance with the laws of the State of California.

Section 14. Notices. Any notice required or authorized to be given by this Agreement shall, unless otherwise specified herein, be in writing, shall be served on the receiving Party either by personal delivery or deposit in the United States mail with first-class postage prepaid, and shall be addressed to the receiving party's specified contact person and address listed below, unless written notice is provided of a change of address as to either party. For the purposes of this Agreement, notices delivered in person shall be deemed communicated as of the date of actual receipt; notices sent via regular mail shall be deemed communicated as of three (3) days after deposit thereof in the United States mail, addressed as shown on the addressee's registry or certificate of receipt.

All notices served pursuant to this Agreement shall be addressed as follows:

If to City:

Les Evans, City Manager
City of Rancho Palos Verdes
30940 Hawthorne Boulevard
Rancho Palos Verdes, California 90275

*With a copy to:*
Carol W. Lynch, City Attorney
Richards, Watson & Gershon
355 South Grand Avenue, 40th Floor
Los Angeles, California 90071

If to Developer: V.H. Properties Corporation
1 Ocean Trails Drive
Rancho Palos Verdes, California 90275
Attn: Jeff Kaplinski

*With a copy to:*
Kenneth Wolfson, Esq.
Latham & Watkins
650 Town Center Drive, 20th Floor
Costa Mesa, California 92626-1925

Either City or Developer may change its mailing address at any time by giving written notice of such change to the other party in the manner provided herein at least ten (10) days prior to the date such change is effected.

IN WITNESS WHEREOF, Developer and City have executed this Agreement as of the date first hereinabove written.

CITY OF RANCHO PALOS VERDES

By: ______________________
Douglas Stern, Mayor

ATTEST:

______________________
Jo Purcell, City Clerk

V. H. PROPERTIES CORPORATION

By: ______________________
Name: E.V.P DEVELOPMENT
Title:

By: ______________________
Name: MIKE VANDERGOES
Title: GENERAL MANAGER

**EXHIBIT A**
**GEOLOGISTS THAT HAVE BEEN APPROVED BY BOTH PARTIES**

Eldon Gath of Earth Consultants International
Scott Kerwin of AMEC Earth and Environmental, Inc.

**EXHIBIT B**
**FINAL MEMBERS OF THE PANEL**

Eldon Gath of Earth Consultants International
Scott Kerwin of AMEC Earth and Environmental, Inc.
Glenn Tofani of Geokinetics

# EXHIBIT C
# AGREEMENT WITH AMEC EARTH &ENVIRONMENTAL, INC.

City Copy

# AGREEMENT

# FOR PROFESSIONAL SERVICES

THIS AGREEMENT is made and entered into as of this 2nd day of September 2003, by and between the City of Rancho Palos Verdes, a municipal corporation, hereinafter designated as "City", and AMEC Earth & Environmental, Inc., hereinafter designated "Consultant."

## RECITALS

A. City desires to utilize the services of one of Consultant's employees, Mr. Scott Kerwin, to be a member of a panel of three experts that will provide City and V.H. Properties Corporation ("Developer") with independent third-party review of certain geological and/or geotechnical data that has been prepared in connection with the golf course and single-family development commonly known as Ocean Trails (the "Ocean Trails Project"). City and Developer have entered into an Agreement regarding this process, which is attached hereto as Exhibit "A" and incorporated herein by this reference.

B. Consultant represents that Mr. Kerwin is qualified to perform such services by virtue of his experience, training, education and expertise.

NOW, THEREFORE, in consideration of performance by the parties of the mutual promises, covenants, and conditions herein contained, the parties hereto agree as follows:

**Services.**

1.1 Scope and Level of Services. Subject to the terms and conditions set forth in this Agreement, Consultant has been requested to provide independent third-party review of the geological and/or geotechnical data that has been prepared in connection with the Ocean Trails Project and to resolve disagreements between City's geological and geotechnical experts and the experts that are performing work on behalf of Developer. Mr. Scott Kerwin is the individual who is assigned by Consultant to be its representative in connection with this Agreement and the work that Consultant will perform.

1.2 City Representative and Developer Representative. For the purposes of this Agreement, the City Representative shall be the Director of Planning Building and Code Enforcement, or such other person designated in writing by the Director (the "City Representative"), and Developer's Representative shall be Jeff Kaplinski, or such other person designated in writing by Developer (the "Developer's Representative").

1.3 Time for Performance. Consultant shall commence the services under this Agreement immediately upon receipt of a written request for such services from the City Representative (a copy of which shall be provided by City to Developer's Representative) and shall perform all services with reasonable diligence.

1.4 Impartial Review. Consultant hereby acknowledges and agrees that although City has retained Consultant, Consultant is charged with providing

an impartial analysis of the geological and geotechnical data related to the Ocean Trails Project and to resolve disagreements between City's geological and geotechnical experts and the experts that are performing work on behalf of Developer. Consultant further acknowledges and agrees that he shall not, either individually or with other members of the panel, meet privately with either the City, its geologists or its geotechnical engineers or Developer, its geologists or its geotechnical engineers. Consultant and City further agree that both City and Developer shall have equal input into Consultant's performance under the Agreement, and that Consultant shall take joint instructions from City and Developer. Nothing in this provision shall be construed to prohibit members of the panel from meeting with one another privately to discuss the geological and geotechnical data.

1.5 Third Party Beneficiary. Developer is a third party beneficiary of this Agreement, and this Agreement shall not be amended, terminated or otherwise modified without Developer's prior written consent, which shall not be unreasonably withheld.

2. **Term**

This Agreement shall commence on September 2, 2003 (the "Effective Date"), and shall continue in full force and effect until terminated by either of the parties hereto in accordance with the provisions of Section 11 of this Agreement. The parties anticipate that a significant amount of work will be required of Consultant and the other members of the panel between the Effective Date and December 31, 2003.

3. **Compensation.** City shall pay Consultant at the hourly rates that are specified in Exhibit "B" to this Agreement, which is attached hereto and incorporated herein by this reference, for all services provided under this Agreement. Consultant hereby acknowledges and agrees that City shall pay Consultant's compensation under this Agreement solely from funds that have been deposited with City by Developer and are held in trust for this purpose. City shall not withhold applicable federal or state payroll or other required taxes, or other authorized deductions from each payment made to Consultant.

4. **Method of Payment.**

4.1 Invoices. Consultant shall submit to City, with a copy to Developer, invoices for all services performed pursuant to this Agreement during the preceding month. The invoices shall describe the services rendered during the period and shall show the number of hours worked, and the services that were performed.

4.2 City and Developer shall review such invoices and shall notify Consultant in writing, with a copy to City or Developer, as applicable, of any disputed amounts. City shall pay all undisputed portions of the invoice within thirty (30) calendar days after receipt of the invoice.

5. **Standard of Performance.** Consultant shall perform all services under this Agreement in accordance with the standard of care generally exercised by like professionals under similar circumstances.

6. **Status as Independent Contractor.** Consultant is, and shall at all times remain as to City, a wholly independent contractor. Consultant shall have no power to

incur any debt, obligation, or liability on behalf of City or otherwise act on behalf of City as an agent. Neither City nor any of its agents shall have control over the conduct of Consultant or any of Consultant's employees, except as set forth in this Agreement. Consultant shall not, at any time, or in any manner, represent that he or any of his agents or employees are in any manner the agents or employees of City. Consultant agrees to pay all required taxes on payments City makes to Consultant for services provided pursuant to this Agreement. Consultant shall fully comply with the workers' compensation laws regarding Consultant and Consultant's employees. Consultant agrees to indemnify and hold City harmless from any failure of Consultant to comply with applicable workers' compensation laws.

7. **Ownership of Work Product.** All reports, documents or other material developed or discovered by Consultant in the performance of this Agreement shall be and remain the joint property of City and Developer without restriction or limitation upon their use. Such material shall not be the subject of a copyright application by Consultant.

8. **Confidentiality.** Consultant in the course of its duties may have access to financial and statistical data of private entities. Consultant covenants that all data, documents, discussion, or other information developed or received by Consultant or provided for performance of this Agreement are deemed confidential and shall not be disclosed by Consultant without prior written authorization by City and Developer. City and Developer shall grant such authorization if disclosure is required by law. All data provided by City shall be returned to City upon the termination of this Agreement, and all data provided by Developer shall be returned to Developer upon the termination of

this Agreement. Consultant's covenant under this section shall survive the termination of this Agreement. Nothing herein shall be construed as preventing City from retaining a copy of all of the documents or data that were provided by, and returned to, Developer.

9. __Conflict of Interest__. Consultant and his employees, if any, will comply with all conflict of interest statutes of the State of California applicable to Consultant's services under this agreement, including, but not limited to, the Political Reform Act (Government Code Sections 81000, et seq.) and Government Code Section 1090. During the term of this Agreement, Consultant and his employees shall not perform work for another person or entity for whom Consultant is not currently performing work (including, without limitation, any person or entity that is affiliated with or related to Developer) that would require Consultant or one of his employees to abstain from a decision under this Agreement pursuant to a conflict of interest statute.

10. __Cooperation__. In the event any claim or action is brought against City or Developer relating to Consultant's performance or services rendered under this Agreement, Consultant shall render any reasonable assistance and cooperation that City or Developer might require. The time required from Consultant to assist City shall be remunerated by City in accordance with Section 3. If this Agreement is no longer in effect, so that Consultant is not performing work for City, and Developer requests Consultant's assistance, Developer and Consultant may enter into a separate agreement regarding compensation for those services.

11. __Termination__. City shall have the right to terminate this Agreement for any reason on fifteen (15) calendar day's written notice to Consultant. Consultant shall have

the right to terminate this Agreement for any reason on thirty (30) calendar day's written notice to City. Consultant shall be paid for services satisfactorily rendered to the last working day the Agreement is in effect, and Consultant shall have no other claim against City by reason of such termination.

12. Notices. Any notices, bills, invoices, or reports authorized or required by this Agreement shall be in writing and shall be deemed received on (a) the day of delivery, if delivered by hand or overnight courier service during Consultant's, Developer's and City's regular business hours or by facsimile before Consultant's regular business hours; or (b) on the third business day following deposit in the United States mail, postage prepaid, to the addresses heretofore set forth in the Agreement, or to such other addresses as the parties may, from time to time, designate in writing pursuant to the provisions of this section.

| | |
|---|---|
| If to City: | City Manager<br>City of Rancho Palos Verdes<br>30940 Hawthorne Boulevard<br>Rancho Palos Verdes, California 90275 |
| If to Consultant: | Scott T. Kerwin<br>Principal Engineering Geologist<br>AMEC Earth & Environmental, Inc.<br>1290 Hancock Street, Suite 102<br>Anaheim, California 92807-1924 |
| With a copy to: | Jeff Kaplinski<br>V.H. Properties Corporation<br>1 Ocean Trails Drive<br>Rancho Palos Verdes, California 90275 |

13. Non-Discrimination and Equal Employment Opportunity. In the performance of this Agreement, Consultant shall not discriminate against any employee, subcontractor, or applicant for employment because of race, color, creed, religion, sex,

marital status, national origin, ancestry, age, physical or mental handicap, medical condition, or sexual orientation.

14. **Non-Assignability; Subcontracting**. Consultant shall not assign or subcontract all or any portion of this Agreement without the written permission of City and Developer. Any attempted or purported assignment or sub-contracting by Consultant shall be null, void and of no effect. However, this Section shall not prevent Consultant from having other employees at AMEC Earth & Environmental, Inc. perform certain work pursuant to this Agreement under Mr. Kerwin's supervision and direction.

15. **Compliance with Laws**. Consultant shall comply with all applicable federal, state and local laws, ordinances, codes and regulations.

16. **Non-Waiver of Terms, Rights and Remedies**. Waiver by either party of any one or more of the conditions of performance under this Agreement shall not be a waiver of any other condition of performance under this Agreement. In no event shall the making by City of any payment to Consultant constitute or be construed as a waiver by City or Developer of any breach of covenant, or any default which may then exist on the part of Consultant, and the making of any such payment by City shall in no way impair or prejudice any right or remedy available to City or Developer with regard to such breach or default. Consultant acknowledges that no waiver by City shall be effective unless Developer agrees to such waiver in writing.

17. **Attorney's Fees**. In the event that either party to this Agreement shall commence any legal action or proceeding to enforce or interpret the provisions of this

Agreement, the prevailing party in such action or proceeding shall be entitled to recover its costs of suit, including reasonable attorney's fees.

18. **Insurance**. During the term of this Agreement, Consultant shall maintain in effect automobile insurance in accordance with the requirements of California State law.

19. **Entire Agreement**. This Agreement, and any other documents incorporated herein by specific reference, represents the entire and integrated agreement between Consultant and City. This Agreement supersedes all prior oral or written negotiations, representations or agreements. This Agreement may not be amended, nor any provision or breach hereof waived, except in a writing signed by the parties to this Agreement.

20. **Section Headings**. The section and subsection headings used herein are for reference and convenience only and shall not be used in any manner in the interpretation hereof.

IN WITNESS WHEREOF, the parties, through their respective authorized representatives, have executed this Agreement as of the date first written above.

CITY OF RANCHO PALOS VERDES

By: ______________________
Mayor

ATTEST:

By: ______________________
City Clerk

R6876\0001\745756.3

**AMEC EARTH & ENVIRONMENTAL, INC.**
**"CONSULTANT"**

By: [signature] 9-10-03
Unit Mgr - Douglas Bell

By: ______________________

Exhibit " A"

Agreement Between City and Developer

Exhibit "B"

AMEC Earth & Environmental, Inc.'s Fee Schedule
for Services Performed Pursuant to this Agreement



1290 N. Hancock Street
Suite 102
Anaheim, CA 92807
Tel (714) 779-2591
Fax (714) 779-8377

4201 Santa Ana Street
Suite F
Ontario, CA 91761
Tel (909) 605-6500
Fax (909) 605-6502

5510 Morehouse Drive
San Diego, CA 92121
Tel (858) 458-9044
Fax (858) 458-0943

# STANDARD FEE SCHEDULE - GEOTECHNICAL & ENVIRONMENTAL SERVICES

## PERSONNEL CHARGES

| Item | Rate |
|---|---|
| Staff Engineer/Staff Geologist/Staff Environmental Specialist | $ 92.00 /hour |
| Sr. Staff Engineer/Sr. Staff Geologist/Sr. Staff Environmental Specialist | 103.00 /hour |
| Project Engineer/Project Engineering Geologist/Project Environmental Specialist | 107.00 /hour |
| Sr. Project Engineer/Sr. Project Engineering Geologist /Sr. Project Environmental Specialist | 117.00 /hour |
| Senior Engineer/Senior Engineering Geologist/Environmental Project Mgr/Health & Safety Officer | 130.00 /hour |
| Supervising Engineer/Supervising Engineering Geologist/Environmental Mgr./Certified Industrial Hygienist | 140.00 /hour |
| Principal Engineer/Principal Engineering Geologist/Principal Environmental Scientist | 156.00 /hour |
| Field Technician I | $ 57.00 /hour |
| Field Technician II/Environmental Technician | 68.00 /hour |
| Senior Field Technician I | 79.00 /hour |
| Senior Field Technician II/Senior Environmental Technician | 84.00 /hour |
| Field Services Manager | 93.00 /hour |
| Laboratory Technician I | $ 60.00 /hour |
| Laboratory Technician II | 70.00 /hour |
| Senior Laboratory Technician | 82.00 /hour |
| Laboratory Manager/Environmental Laboratory Supervisor | 92.00 /hour |
| Geotechnical/Environmental Draftsperson I | $ 60.00 /hour |
| Geotechnical/Environmental Draftsperson II | 66.00 /hour |
| Senior Geotechnical/Environmental Draftsperson | 77.00 /hour |
| Geotechnical/Environmental Clerk-Typist | $ 50.00 /hour |
| Word Processor | 57.00/hour |
| Senior Word Processor | 66.00 /hour |
| Depositions and Court Testimony (minimum charge of two hours) | $325.00 /hour |

Overtime Premium is 30% of PERSONNEL CHARGE

## EXPENSES

| Item | Rate |
|---|---|
| Vehicle Use for Field Services (added to appropriate "PERSONNEL CHARGE") | $ 7.00 /hour |
| Per Diem for Living Expenses | 105.00 /pers |
| Postage, Reproduction, Long Distance Telephone, and Miscellaneous Supplies | 6% of Labor |
| Outside Services (Consultants, Surveys, Chemical Lab Tests, etc.) | Cost+20% |
| Reimbursables (Travel Expenses, Maps, Photos, Permits, Expendable Supplies, etc.) | Cost+20% |
| Personnel Protective Equipment (daily charge) | $130.00/pers |

## EQUIPMENT CHARGES

| Item | Rate |
|---|---|
| BAT Permeameter | $145.00/day |
| CADD | 10.00 /hour |
| Concrete/Asphalt Core Drill ... $12.00/core plus | 22.00 /hour |
| Exploratory Equipment Rental (Drill Rig, Backhoe, etc.) | Cost+20% |
| Ground Penetrating Radar | 600.00 /day |
| Groundwater Transducer and Dataloggers | *32.00 /hour |
| HNU (Photoionization Meter) | 100.00 /day |
| Monitoring Equipment Rental (Air, Water, Hazardous Materials, etc.) | Cost+20% |
| OVA (Organic Vapor Analyzer) | 125.00 /day |
| Penetrometer - Dynamic | 27.00 /hour |
| Penetrometer - Pneumatic | 39.00 /hour |
| Single-Channel Seismic or Resistivity Equipment | 21.00 /hour |
| Twelve-channel Seismic or Resistivity Equipment | 30.00/hour |
| Slope Indicator (Inclinometer) | 27.00 /hour |

*Reduced rates will apply to extended usage

## STANDARD FEE SCHEDULE - GEOTECHNICAL & ENVIRONMENTAL SERVICES (cont'd)

**PERMITS, FEES AND BONDS**

The costs of all permits and fees required by government agencies and performance or other bonds are to be paid by the Client, unless stated otherwise in an accompanying proposal.

**PROPOSAL PERIOD**

Unless otherwise stated, a proposal accompanying this schedule is effective for sixty (60) days. If authorization to proceed is not received within this period, AMEC reserves the right to renegotiate the fee.

**LABORATORY TESTING**

| Test | Fee |
|---|---|
| California Bearing Ratio (with moisture-density curve) | $ 420.00 /test |
| California Bearing Ratio (individual point - excluding moisture-density curve) | 115.00/point |
| Chloride Content | 50.00 /test |
| Consolidation Test (single point) | 80.00 /test |
| Consolidation Test (without rate data) | 125.00 /test |
| Consolidation Test Rate Data (per load increment) | 55.00/each |
| Direct Shear Test (at natural moisture - constant strain rate) | 45.00/point |
| Direct Shear Test (saturated - constant strain rate) | 55.00/point |
| Direct Shear Test (saturated, recycled - constant strain rate) | 110.00/point |
| Direct Shear Test (ASTM 3080 - consolidated drained, 3 points/test) | 375.00 /test |
| Direct Shear Test (ASTM 3080 - consolidated drained, residual, 3 points/test) | 630.00 /test |
| Durability Index - Coarse and Fine | 150.00 /test |
| Expansion Index Test | 100.00 /test |
| Grain-Size Analysis - Sand-Clay, including Hydrometer | 135.00 /test |
| Grain-Size Analysis - Gravel-Clay, including Hydrometer | 175.00 /test |
| Liquid Limit or Plastic Limit | 50.00 /test |
| Los Angeles Abrasion Test (500 revolutions) | 135.00 /test |
| Los Angeles Abrasion Test (1000 revolutions) | 160.00 /test |
| Mechanical Analysis - ASTM D1140 (wash 200 sieve) | 50.00 /test |
| Mechanical Analysis - Sand or Gravel (dry sieve) | 70.00 /test |
| Mechanical Analysis - Sand or Gravel (wash sieve) | 90.00 /test |
| Mechanical Analysis - Sand and Gravel (wash sieve) | 130.00 /test |
| Moisture Content | 10.00 /test |
| Moisture-Density Curve (Calif. 216) | 140.00 /test |
| Moisture-Density Curve for Compacted Fills (4-inch Mold) | 155.00 /test |
| Moisture-Density Curve for Compacted Fills (6-inch Mold) | 175.00 /test |
| Moisture-Density Single Point | 70.00 /test |
| Permeability (falling head) | 135.00 /test |
| Permeability (constant head) | 229.00 /test |
| Permeability (triaxial: EPA Method 9100) | 360.00 /test |
| Resistance Value | 199.00 /test |
| Resistance Value (lime or cement-treated) | 245.00 /test |
| Resistivity Test (Calif. 532 or 643) | 85.00 /test |
| Sand Equivalent | 70.00 /test |
| Specific Gravity and Absorption - Gravel | 65.00 /test |
| Specific Gravity - Fine-Grained Soils | 70.00 /test |
| Sulphate Content | 45.00 /test |
| Triaxial Compression Test (U-U) | 115.00 /test |
| Triaxial Compression Tests (CD and CU with pore pressure) | 400.00/point |
| Unconfined Compression Test (undisturbed sample) | 60.00 /test |
| Unit Dry Weight and Moisture Content (undisturbed sample) | 20.00 /test |

Special Sample Preparation and Laboratory Testing not listed above charged at applicable hourly rates for personnel

# EXHIBIT D
# AGREEMENT WITH EARTH CONSULTANTS INTERNATIONAL

City Copy

# AGREEMENT

# FOR PROFESSIONAL SERVICES

THIS AGREEMENT is made and entered into as of this 2nd day of September 2003, by and between the City of Rancho Palos Verdes, a municipal corporation, hereinafter designated as "City", and Earth Consultants International, hereinafter designated "Consultant."

## RECITALS

**A.** City desires to utilize the services of one of Consultant's employees, Mr. Eldon Gath, to be a member of a panel of three experts that will provide City and V.H. Properties Corporation ("Developer") with independent third-party review of certain geological and/or geotechnical data that has been prepared in connection with the golf course and single-family development commonly known as Ocean Trails (the "Ocean Trails Project"). City and Developer have entered into an Agreement regarding this process, which is attached hereto as Exhibit "A" and incorporated herein by this reference.

**B.** Consultant represents that Mr. Gath is qualified to perform such services by virtue of his experience, training, education and expertise.

NOW, THEREFORE, in consideration of performance by the parties of the mutual promises, covenants, and conditions herein contained, the parties hereto agree as follows:

**Services.**

1.1 Scope and Level of Services. Subject to the terms and conditions set forth in this Agreement, Consultant has been requested to provide independent third-party review of the geological and/or geotechnical data that has been prepared in connection with the Ocean Trails Project and to resolve disagreements between City's geological and geotechnical experts and the experts that are performing work on behalf of Developer. Mr. Eldon Gath is the individual who is assigned by Consultant to be its representative in connection with this Agreement and the work that Consultant will perform.

1.2 City Representative and Developer Representative. For the purposes of this Agreement, the City Representative shall be the Director of Planning Building and Code Enforcement, or such other person designated in writing by the Director (the "City Representative"), and Developer's Representative shall be Jeff Kaplinski, or such other person designated in writing by Developer (the "Developer's Representative").

1.3 Time for Performance. Consultant shall commence the services under this Agreement immediately upon receipt of a written request for such services from the City Representative (a copy of which shall be provided by City to Developer's Representative) and shall perform all services with reasonable diligence.

1.4 Impartial Review. Consultant hereby acknowledges and agrees that although City has retained Consultant, Consultant is charged with providing

an impartial analysis of the geological and geotechnical data related to the Ocean Trails Project and to resolve disagreements between City's geological and geotechnical experts and the experts that are performing work on behalf of Developer. Consultant further acknowledges and agrees that he shall not, either individually or with other members of the panel, meet privately with either the City, its geologists or its geotechnical engineers or Developer, its geologists or its geotechnical engineers. Consultant and City further agree that both City and Developer shall have equal input into Consultant's performance under the Agreement, and that Consultant shall take joint instructions from City and Developer. Nothing in this provision shall be construed to prohibit members of the panel from meeting with one another privately to discuss the geological and geotechnical data.

1.5 Third Party Beneficiary. Developer is a third party beneficiary of this Agreement, and this Agreement shall not be amended, terminated or otherwise modified without Developer's prior written consent, which shall not be unreasonably withheld.

2. **Term**

This Agreement shall commence on September 2, 2003 (the "Effective Date"), and shall continue in full force and effect until terminated by either of the parties hereto in accordance with the provisions of Section 11 of this Agreement. The parties anticipate that a significant amount of work will be required of Consultant and the other members of the panel between the Effective Date and December 31, 2003.

3. **Compensation.** City shall pay Consultant at the hourly rates that are specified in Exhibit "B" to this Agreement, which is attached hereto and incorporated herein by this reference, for all services provided under this Agreement. Consultant hereby acknowledges and agrees that City shall pay Consultant's compensation under this Agreement solely from funds that have been deposited with City by Developer and are held in trust for this purpose. City shall not withhold applicable federal or state payroll or other required taxes, or other authorized deductions from each payment made to Consultant.

4. **Method of Payment.**

4.1 Invoices. Consultant shall submit to City, with a copy to Developer, invoices for all services performed pursuant to this Agreement during the preceding month. The invoices shall describe the services rendered during the period and shall show the number of hours worked, and the services that were performed.

4.2 City and Developer shall review such invoices and shall notify Consultant in writing, with a copy to City or Developer, as applicable, of any disputed amounts. City shall pay all undisputed portions of the invoice within thirty (30) calendar days after receipt of the invoice.

5. **Standard of Performance.** Consultant shall perform all services under this Agreement in accordance with the standard of care generally exercised by like professionals under similar circumstances.

6. **Status as Independent Contractor.** Consultant is, and shall at all times remain as to City, a wholly independent contractor. Consultant shall have no power to

incur any debt, obligation, or liability on behalf of City or otherwise act on behalf of City as an agent. Neither City nor any of its agents shall have control over the conduct of Consultant or any of Consultant's employees, except as set forth in this Agreement. Consultant shall not, at any time, or in any manner, represent that he or any of his agents or employees are in any manner the agents or employees of City. Consultant agrees to pay all required taxes on payments City makes to Consultant for services provided pursuant to this Agreement. Consultant shall fully comply with the workers' compensation laws regarding Consultant and Consultant's employees. Consultant agrees to indemnify and hold City harmless from any failure of Consultant to comply with applicable workers' compensation laws.

7. **Ownership of Work Product.** All reports, documents or other material developed or discovered by Consultant in the performance of this Agreement shall be and remain the joint property of City and Developer without restriction or limitation upon their use. Such material shall not be the subject of a copyright application by Consultant.

8. **Confidentiality.** Consultant in the course of its duties may have access to financial and statistical data of private entities. Consultant covenants that all data, documents, discussion, or other information developed or received by Consultant or provided for performance of this Agreement are deemed confidential and shall not be disclosed by Consultant without prior written authorization by City and Developer. City and Developer shall grant such authorization if disclosure is required by law. All data provided by City shall be returned to City upon the termination of this Agreement, and all data provided by Developer shall be returned to Developer upon the termination of

this Agreement. Consultant's covenant under this section shall survive the termination of this Agreement. Nothing herein shall be construed as preventing City from retaining a copy of all of the documents or data that were provided by, and returned to, Developer.

9. **Conflict of Interest**. Consultant and his employees, if any, will comply with all conflict of interest statutes of the State of California applicable to Consultant's services under this agreement, including, but not limited to, the Political Reform Act (Government Code Sections 81000, et seq.) and Government Code Section 1090. During the term of this Agreement, Consultant and his employees shall not perform work for another person or entity for whom Consultant is not currently performing work (including, without limitation, any person or entity that is affiliated with or related to Developer) that would require Consultant or one of his employees to abstain from a decision under this Agreement pursuant to a conflict of interest statute.

10. **Cooperation**. In the event any claim or action is brought against City or Developer relating to Consultant's performance or services rendered under this Agreement, Consultant shall render any reasonable assistance and cooperation that City or Developer might require. The time required from Consultant to assist City shall be remunerated by City in accordance with Section 3. If this Agreement is no longer in effect, so that Consultant is not performing work for City, and Developer requests Consultant's assistance, Developer and Consultant may enter into a separate agreement regarding compensation for those services.

11. **Termination**. City shall have the right to terminate this Agreement for any reason on fifteen (15) calendar day's written notice to Consultant. Consultant shall have

the right to terminate this Agreement for any reason on thirty (30) calendar day's written notice to City. Consultant shall be paid for services satisfactorily rendered to the last working day the Agreement is in effect, and Consultant shall have no other claim against City by reason of such termination.

12. **Notices**. Any notices, bills, invoices, or reports authorized or required by this Agreement shall be in writing and shall be deemed received on (a) the day of delivery, if delivered by hand or overnight courier service during Consultant's, Developer's and City's regular business hours or by facsimile before Consultant's regular business hours; or (b) on the third business day following deposit in the United States mail, postage prepaid, to the addresses heretofore set forth in the Agreement, or to such other addresses as the parties may, from time to time, designate in writing pursuant to the provisions of this section.

| | |
|---|---|
| If to City: | City Manager<br>City of Rancho Palos Verdes<br>30940 Hawthorne Boulevard<br>Rancho Palos Verdes, California 90275 |
| If to Consultant: | Eldon Gath<br>Earth Consultants International<br>150 El Camino Real, Suite 212<br>Tustin, California 92780 |
| With a copy to: | Jeff Kaplinski<br>V.H. Properties Corporation<br>1 Ocean Trails Drive<br>Rancho Palos Verdes, California 90275 |

13. **Non-Discrimination and Equal Employment Opportunity**. In the performance of this Agreement, Consultant shall not discriminate against any employee, subcontractor, or applicant for employment because of race, color, creed, religion, sex,

marital status, national origin, ancestry, age, physical or mental handicap, medical condition, or sexual orientation.

14. **Non-Assignability; Subcontracting.** Consultant shall not assign or subcontract all or any portion of this Agreement without the written permission of City and Developer. Any attempted or purported assignment or sub-contracting by Consultant shall be null, void and of no effect. However, this Section shall not prevent Consultant from having other employees at Earth Consultants International perform certain work pursuant to this Agreement under Mr. Gath's supervision and direction.

15. **Compliance with Laws.** Consultant shall comply with all applicable federal, state and local laws, ordinances, codes and regulations.

16. **Non-Waiver of Terms, Rights and Remedies.** Waiver by either party of any one or more of the conditions of performance under this Agreement shall not be a waiver of any other condition of performance under this Agreement. In no event shall the making by City of any payment to Consultant constitute or be construed as a waiver by City or Developer of any breach of covenant, or any default which may then exist on the part of Consultant, and the making of any such payment by City shall in no way impair or prejudice any right or remedy available to City or Developer with regard to such breach or default. Consultant acknowledges that no waiver by City shall be effective unless Developer agrees to such waiver in writing.

17. **Attorney's Fees.** In the event that either party to this Agreement shall commence any legal action or proceeding to enforce or interpret the provisions of this

Agreement, the prevailing party in such action or proceeding shall be entitled to recover its costs of suit, including reasonable attorney's fees.

18. **Insurance**. During the term of this Agreement, Consultant shall maintain in effect automobile insurance in accordance with the requirements of California State law.

19. **Entire Agreement**. This Agreement, and any other documents incorporated herein by specific reference, represents the entire and integrated agreement between Consultant and City. This Agreement supersedes all prior oral or written negotiations, representations or agreements. This Agreement may not be amended, nor any provision or breach hereof waived, except in a writing signed by the parties to this Agreement.

20. **Section Headings**. The section and subsection headings used herein are for reference and convenience only and shall not be used in any manner in the interpretation hereof.

IN WITNESS WHEREOF, the parties, through their respective authorized representatives, have executed this Agreement as of the date first written above.

CITY OF RANCHO PALOS VERDES

By: ______________________
Mayor

ATTEST:

By: ______________________
City Clerk

R6876\0001\745755.3

**EARTH CONSULTANT'S INTERNATIONAL**
**"CONSULTANT"**

By: [signature]
Eldon Gath

By: Sept 10, 2003

Exhibit " A"

Agreement Between City and Developer

## Exhibit "B"

### Consultant's Hourly Rates for Services Performed Pursuant to this Agreement





Earth
Consultants
International

## 2003 Professional Fee Schedule

**PROFESSIONAL STAFF FEES** (per hour)

| | |
|---|---|
| Senior Consultant | $ 200 |
| Project Consultant | $ 150 |
| Staff Consultant | $100 |
| GIS Technician | $ 80 |

Expert witness deposition and trial testimony will be charged at $300/hour, with a minimum charge of four hours.

**REIMBURSABLE EXPENSES**

| | |
|---|---|
| Vehicle Usage | $0.50/mile |
| Plotter-generated maps | $25/sheet |

- Heavy equipment, subcontractor fees and expenses, travel, shipping, reproduction, and other reimbursable expenses will be invoiced at cost plus 20%.
- Field equipment (total station, GPS instruments, lap top computers, digital cameras, water level, etc.) may be expensed against the project at normal depreciation rates.
- Consumable field supplies will be invoiced as purchased.

**INVOICES**

- Invoices are rendered monthly, payable upon receipt. Larger projects may be invoiced bi-weekly.
- If payments are not received in 40 days, work on the project will be suspended.

**PROPOSAL ACCEPTANCE PERIOD**

Proposals are valid for 60 days unless otherwise stated.

**DISCLOSURE**

Client agrees to provide all information in Client's possession pertinent to actual or possible presence of hazardous chemicals on site, and agrees to reimburse ECI for all costs associated with the unanticipated discovery of such substances. Client also agrees to disclose all potential security concerns associated with the work place. If security protection of either personnel or equipment is required, it shall be obtained and either reimbursed, or paid for directly, by Client. At no time shall ECI field personnel be required to enter into a situation that they consider dangerous.

**OVERTIME**

Overtime for all field personnel will be charged at 1.25 times the basic rate, only if overtime is required by the client. Overtime is defined as the excess of 8 hours on weekdays, hours before 7am or after 5pm, and all Saturdays, Sundays, and Holidays, excluding travel time in all situations.

This fee schedule is effective January 1 through December 31, 2003
and is subject to modification after that period.

150 El Camino Real, Suite 212 Tustin California 92780
TEL (714) 544-5321 FAX (714) 544-5553 www.earthconsultants.com

**EXHIBIT E**
**AGREEMENT WITH GEOKINETICS**

City Copy

**AGREEMENT**

**FOR PROFESSIONAL SERVICES**

THIS AGREEMENT is made and entered into as of this 2nd day of September 2003, by and between the City of Rancho Palos Verdes, a municipal corporation, hereinafter designated as "City", and Geokinetics, Inc., hereinafter designated "Consultant."

**RECITALS**

**A.** City desires to utilize the services of one of Consultant's employees, Mr. Glenn Tofani, to be a member of a panel of three experts that will provide City and V.H. Properties Corporation ("Developer") with independent third-party review of certain geological and/or geotechnical data that has been prepared in connection with the golf course and single-family development commonly known as Ocean Trails (the "Ocean Trails Project"). City and Developer have entered into an Agreement regarding this process, which is attached hereto as Exhibit "A" and incorporated herein by this reference.

**B.** Consultant represents that Mr. Tofani is qualified to perform such services by virtue of his experience, training, education and expertise.

NOW, THEREFORE, in consideration of performance by the parties of the mutual promises, covenants, and conditions herein contained, the parties hereto agree as follows:

**Services.**

1.1 Scope and Level of Services. Subject to the terms and conditions set forth in this Agreement, Consultant has been requested to provide independent third-party review of the geological and/or geotechnical data that has been prepared in connection with the Ocean Trails Project and to resolve disagreements between City's geological and geotechnical experts and the experts that are performing work on behalf of Developer. Mr. Glenn Tofani is the individual who is assigned by Consultant to be its representative in connection with this Agreement and the work that Consultant will perform.

1.2 City Representative and Developer Representative. For the purposes of this Agreement, the City Representative shall be the Director of Planning Building and Code Enforcement, or such other person designated in writing by the Director (the "City Representative"), and Developer's Representative shall be Jeff Kaplinski, or such other person designated in writing by Developer (the "Developer's Representative").

1.3 Time for Performance. Consultant shall commence the services under this Agreement immediately upon receipt of a written request for such services from the City Representative (a copy of which shall be provided by City to Developer's Representative) and shall perform all services with reasonable diligence.

1.4 Impartial Review. Consultant hereby acknowledges and agrees that although City has retained Consultant, Consultant is charged with providing

an impartial analysis of the geological and geotechnical data related to the Ocean Trails Project and to resolve disagreements between City's geological and geotechnical experts and the experts that are performing work on behalf of Developer. Consultant further acknowledges and agrees that he shall not, either individually or with other members of the panel, meet privately with either the City, its geologists or its geotechnical engineers or Developer, its geologists or its geotechnical engineers. Consultant and City further agree that both City and Developer shall have equal input into Consultant's performance under the Agreement, and that Consultant shall 'take joint instructions from City and Developer. Nothing in this provision shall be construed to prohibit members of the panel from meeting with one another privately to discuss the geological and geotechnical data.

1.5 Third Party Beneficiary. Developer is a third party beneficiary of this Agreement, and this Agreement shall not be amended, terminated or otherwise modified without Developer's prior written consent, which shall not be unreasonably withheld.

## 2. Term

This Agreement shall commence on September 2, 2003 (the "Effective Date"), and shall continue in full force and effect until terminated by either of the parties hereto in accordance with the provisions of Section 11 of this Agreement. The parties anticipate that a significant amount of work will be required of Consultant and the other members of the panel between the Effective Date and December 31, 2003.

3. **Compensation.** City shall pay Consultant at the hourly rates that are specified in Exhibit "B" to this Agreement, which is attached hereto and incorporated herein by this reference, for all services provided under this Agreement. Consultant hereby acknowledges and agrees that City shall pay Consultant's compensation under this Agreement solely from funds that have been deposited with City by Developer and are held in trust for this purpose. City shall not withhold applicable federal or state payroll or other required taxes, or other authorized deductions from each payment made to Consultant.

4. **Method of Payment.**

4.1 Invoices. Consultant shall submit to City, with a copy to Developer, invoices for all services performed pursuant to this Agreement during the preceding month. The invoices shall describe the services rendered during the period and shall show the number of hours worked, and the services that were performed.

4.2 City and Developer shall review such invoices and shall notify Consultant in writing, with a copy to City or Developer, as applicable, of any disputed amounts. City shall pay all undisputed portions of the invoice within thirty (30) calendar days after receipt of the invoice.

5. **Standard of Performance.** Consultant shall perform all services under this Agreement in accordance with the standard of care generally exercised by like professionals under similar circumstances.

6. **Status as Independent Contractor.** Consultant is, and shall at all times remain as to City, a wholly independent contractor. Consultant shall have no power to

incur any debt, obligation, or liability on behalf of City or otherwise act on behalf of City as an agent. Neither City nor any of its agents shall have control over the conduct of Consultant or any of Consultant's employees, except as set forth in this Agreement. Consultant shall not, at any time, or in any manner, represent that he or any of his agents or employees are in any manner the agents or employees of City. Consultant agrees to pay all required taxes on payments City makes to Consultant for services provided pursuant to this Agreement. Consultant shall fully comply with the workers' compensation laws regarding Consultant and Consultant's employees. Consultant agrees to indemnify and hold City harmless from any failure of Consultant to comply with applicable workers' compensation laws.

7. **Ownership of Work Product**. All reports, documents or other material developed or discovered by Consultant in the performance of this Agreement shall be and remain the joint property of City and Developer without restriction or limitation upon their use. Such material shall not be the subject of a copyright application by Consultant.

8. **Confidentiality**. Consultant in the course of its duties may have access to financial and statistical data of private entities. Consultant covenants that all data, documents, discussion, or other information developed or received by Consultant or provided for performance of this Agreement are deemed confidential and shall not be disclosed by Consultant without prior written authorization by City and Developer. City and Developer shall grant such authorization if disclosure is required by law. All data provided by City shall be returned to City upon the termination of this Agreement, and all data provided by Developer shall be returned to Developer upon the termination of

this Agreement. Consultant's covenant under this section shall survive the termination of this Agreement. Nothing herein shall be construed as preventing City from retaining a copy of all documents or data that were provided by, and returned to Developer.

9. **Conflict of Interest**. Consultant and his employees, if any, will comply with all conflict of interest statutes of the State of California applicable to Consultant's services under this agreement, including, but not limited to, the Political Reform Act (Government Code Sections 81000, et seq.) and Government Code Section 1090. During the term of this Agreement, Consultant and his employees shall not perform work for another person or entity for whom Consultant is not currently performing work (including, without limitation, any person or entity that is affiliated with or related to Developer) that would require Consultant or one of his employees to abstain from a decision under this Agreement pursuant to a conflict of interest statute.

10. **Cooperation**. In the event any claim or action is brought against City or Developer relating to Consultant's performance or services rendered under this Agreement, Consultant shall render any reasonable assistance and cooperation that City or Developer might require. The time required from Consultant to assist City shall be remunerated by City in accordance with Section 3. If this Agreement is no longer in effect, so that Consultant is not performing work for City, and Developer requests Consultant's assistance, Developer and Consultant may enter into a separate agreement regarding compensation for those services.

11. **Termination**. City shall have the right to terminate this Agreement for any reason on fifteen (15) calendar day's written notice to Consultant. Consultant shall have the right to terminate this Agreement for any reason on thirty (30) calendar day's written

notice to City. Consultant shall be paid for services satisfactorily rendered to the last working day the Agreement is in effect, and Consultant shall have no other claim against City by reason of such termination.

12. Notices. Any notices, bills, invoices, or reports authorized or required by this Agreement shall be in writing and shall be deemed received on (a) the day of delivery, if delivered by hand or overnight courier service during Consultant's, Developer's and City's regular business hours or by facsimile before Consultant's regular business hours; or (b) on the third business day following deposit in the United States mail, postage prepaid, to the addresses heretofore set forth in the Agreement, or to such other addresses as the parties may, from time to time, designate in writing pursuant to the provisions of this section.

| | |
|---|---|
| If to City: | City Manager<br>City of Rancho Palos Verdes<br>30940 Hawthorne Boulevard<br>Rancho Palos Verdes, California 90275 |
| If to Consultant: | Glenn Tofani<br>Geokinetics<br>15510 Rockfield Boulevard, Suite C3<br>Irvine, California 92619 |
| With a copy to: | Jeff Kaplinski<br>V.H. Properties Corporation<br>1 Ocean Trails Drive<br>Rancho Palos Verdes, California 90275 |

13. Non-Discrimination and Equal Employment Opportunity. In the performance of this Agreement, Consultant shall not discriminate against any employee, subcontractor, or applicant for employment because of race, color, creed, religion, sex,

marital status, national origin, ancestry, age, physical or mental handicap, medical condition, or sexual orientation.

14. **Non-Assignability; Subcontracting**. Consultant shall not assign or subcontract all or any portion of this Agreement without the written permission of City and Developer. Any attempted or purported assignment or sub-contracting by Consultant shall be null, void and of no effect. However, this Section shall not prevent Consultant from having other employees at Geokinetics perform certain work pursuant to this Agreement under Mr. Tofani's supervision and direction.

15. **Compliance with Laws**. Consultant shall comply with all applicable federal, state and local laws, ordinances, codes and regulations.

16. **Non-Waiver of Terms, Rights and Remedies**. Waiver by either party of any one or more of the conditions of performance under this Agreement shall not be a waiver of any other condition of performance under this Agreement. In no event shall the making by City of any payment to Consultant constitute or be construed as a waiver by City or Developer of any breach of covenant, or any default which may then exist on the part of Consultant, and the making of any such payment by City shall in no way impair or prejudice any right or remedy available to City or Developer with regard to such breach or default. Consultant acknowledges that no waiver by City shall be effective unless Developer agrees to such waiver in writing.

17. **Attorney's Fees**. In the event that either party to this Agreement shall commence any legal action or proceeding to enforce or interpret the provisions of this

Agreement, the prevailing party in such action or proceeding shall be entitled to recover its costs of suit, including reasonable attorney's fees.

**18. Insurance.** During the term of this Agreement, Consultant shall maintain in effect automobile insurance in accordance with the requirements of California State law.

**19. Entire Agreement.** This Agreement, and any other documents incorporated herein by specific reference, represents the entire and integrated agreement between Consultant and City. This Agreement supersedes all prior oral or written negotiations, representations or agreements. This Agreement may not be amended, nor any provision or breach hereof waived, except in a writing signed by the parties to this Agreement.

**20. Section Headings.** The section and subsection headings used herein are for reference and convenience only and shall not be used in any manner in the interpretation hereof.

IN WITNESS WHEREOF, the parties, through their respective authorized representatives, have executed this Agreement as of the date first written above.

**CITY OF RANCHO PALOS VERDES**

By: ______________________
Mayor

**ATTEST:**

By: ______________________
City Clerk

R6876\0001\745760.3

**GEOKINETICS**
**"CONSULTANT"**

By: ______________________

By: ______________________

Exhibit " A"

Agreement Between City and Developer

Exhibit "B"

**Geokinetic's Fee Schedule**
**for Services Performed Pursuant to this Agreement**

# 2003 PROFESSIONAL FEE SCHEDULE
## GEOTECHNICAL CONSULTING SERVICES

**FEES FOR PROFESSIONAL, TECHNICAL AND SUPPORT STAFF**

GeoKinetics Inc. charges our clients for professional, technical and support services for time directly related to a project. Charges are not made for ordinary secretarial services, office management, accounting, maintenance or other activities not directly related to a project. Current personnel classifications and rates are summarized below:

| Personnel Classification | Rate (per hour) |
|---|---|
| Principal Engineer | $165.00 |
| Principal Geologist | 150.00 |
| Senior Engineer or Geologist[1] | 125.00 |
| Project Engineer or Geologist[1] | 105.00 |
| Staff Engineer or Geologist[1] | 90.00 |
| Senior Technician[1] | 75.00 |
| Staff Technician[1] | 60.00 |
| Senior Technical Illustrator[1] | 85.00 |
| Technical Illustrator[1] | 65.00 |
| Project Coordinator[1] | 55.00 |
| Field Laborer[1] | 45.00 |

(1) Overtime will be charged at 1.3 times the above listed rates for these personnel classifications. Overtime is defined as time charged to a project in excess of 8 hours per day, time worked on weekends, holidays, or night shifts.

Deposition and trial testimony by Glenn Tofani will be charged at the rate of $300.00 per hour.

**PROJECT-RELATED EXPENSES**

Expenses directly related to a project will be billed as follows:

Subcontractors (drilling, trenching, surveying, testing, etc.), and travel related expenses (hotels, meals, vehicle rentals, air travel, etc.) and other project expenses (e.g., aerial photographs, outside reprographics, equipment rental, overnight shipping, project-related expendable supplies, etc.) will be charged at cost plus 15 percent.

Field equipment and expendables will be charged in accordance with GeoKinetics' Standard Field Equipment Cost schedule.

Travel time to and from a project will be invoiced in accordance with the hourly rates listed above. Mileage for project –related travel will be billed at $0.40 per mile.

- Continued on Reverse -

In-house photocopy/reproduction will be billed at \$.08/page, for 1-100 pages, \$.05/page for 101+ pages. Black & White Digital LaserJet 1200-dpi prints for 8½"x11" and 11"x17" paper sizes will be billed at \$.08/page, for 1-100 pages, \$.05/page for 101+ pages; and \$0.20/page for 1-100 pages, \$.15/page for 101+ pages, respectively. Color, 8 ½"x11" digital prints will be billed at \$1.70/page for 2-5 pages, \$1.50/page for 6-10 pages, \$1.25/page for 11-49 pages, \$1.05/page for 50-99 pages, and \$.85/page for 101+ pages. Color 11"x17" digital prints will be billed at \$2.95/ page for 2-5 pages, \$2.55/page for 6-10 pages, \$2.15/page for 11-49 pages, \$1.90/page for 50-99 pages, and \$1.70/page for 101+ pages, respectively. Oversize, digital color 600-dpi prints will be billed at \$12.00/ft$^2$.

Photograph development and printing will be billed at \$.40/photo.

**CHANGES TO FEE SCHEDULE**

This fee schedule applies to services rendered in the current year and/or until a new schedule is issued. GeoKinetics Inc. reviews and revises its fee schedule periodically. Unless other arrangements have been made, charges for services (including continuing projects initiated in the prior year) will be based on the most recently published fee schedule.

**INVOICES**

Invoices will be issued monthly, or at other specified intervals for some projects, and will be payable upon receipt, unless other arrangements have been previously agreed upon. Interest of 1 percent per month (but not exceeding the maximum rate allowed by law) will be payable on accounts not paid within 60 days. Any attorney's fees or other costs incurred in collecting delinquent accounts shall be paid by the client.

**CONDITIONS**

GeoKinetics Inc. warrants that its services are performed in accordance with generally accepted standards of care and diligence normally practiced by recognized consulting firms performing services of a similar nature. No other warranty, either express or implied, is included or intended in GeoKinetics Inc.'s proposals, contracts or reports.

GeoKinetics Inc. will not be liable for any loss, damage or liability to persons or property arising out of performance of its services, other than for professional errors and omissions within the stated limits, coverage or conditions of its insurance. For any damage resulting from any error, omission, or other professional negligence, our liability will be limited to \$25,000 or GeoKinetics Inc.'s total billing on the project in question, whichever is less. If higher limits are required, arrangement should be made with GeoKinetics prior to the initiation of the project. The client should discuss higher limits, and the charges involved, with GeoKinetics Inc.

# EXHIBIT B

EXHIBIT B

City Copy Greg

SECOND AGREEMENT BETWEEN THE CITY OF RANCHO PALOS VERDES AND V.H. PROPERTIES, CORPORATION REGARDING GEOLOGIC ISSUES

THIS SECOND AGREEMENT BETWEEN THE CITY OF RANCHO PALOS VERDES AND V.H. PROPERTIES, CORPORATION REGARDING GEOLOGIC ISSUES ("Second Agreement") is made and entered this 16th day of July, 2004, by and between the City of Rancho Palos Verdes, a California municipal corporation ("City") and V.H. Properties, Corporation ("Developer"). City and Developer are sometimes referred to singularly herein as "Party" and collectively as the "Parties."

RECITALS

A. Developer is the owner of that certain real property encompassed within Tentative Tract Map No. 50666, a portion of which is proposed for single-family residential development (the "Property"). The Property is part of a larger golf course and residential project that is being constructed on the Property, which is owned by Developer and is generally located at 1 Ocean Trails Drive, Rancho Palos Verdes, California, commonly known as the Ocean Trails Project ("Ocean Trails" or "the Project"). Ocean Trails consists of a 258-acre site bounded by Palos Verdes Drive South on the north, the Portuguese Bend Club on the west, the Pacific Ocean on the south and Shoreline Park on the east.

B. City approved various applications for the Ocean Trails project to allow the construction of a Residential Planned Development of 75 single family dwelling units and the development of an 18-hole golf course with associated clubhouse and parking facilities.

C. The Property encompasses three landslide areas. Because portions of the Property that are being developed for residential purposes and for public parks and trails may be affected by one or more landslides on the Property, the public safety, health and welfare require that the geological and geotechnical conditions of the Property be thoroughly analyzed and addressed before the entire eighteen-hole golf course can open for public use.

D. City and Developer have each retained experts to analyze the geological conditions that underlie the site and to make recommendations regarding the potential development of the Property. However, given the inherent complexity of the geology on the Property and the inherent subjectivity of the science of geology, the Parties' respective experts have not always agreed on the geologic conditions on the Property.

E. In the past, the Parties have found it useful to utilize a three-member panel of independent experts to review the geological and geotechnical data for the Ocean Trails Project to resolve any differences between the Parties' respective experts. However, the former panel of experts did not provide the definitive guidance desired by either City or Developer regarding the development of the residential lots in Tentative Tract 50666. Accordingly, City and Developer formed a new three-member panel (the "Panel") to resolve disputes regarding the geotechnical and geological issues affecting the development of the residences on the Property.

F. City and Developer have selected three new geological/geotechnical experts to comprise the Panel and entered into an Agreement to memorialize their understanding with respect to certain work that is to be performed by the Panel regarding the boundaries of Landslide A and its affect on future development of the Property ("the First Agreement").

G. City and Developer wish to enter into this Second Agreement so that the Panel can resolve additional disputes between the City's geological and geotechnical experts and the experts that are performing work on behalf of Developer, which previously were determined by the City's geologist or geotechnical engineer, regarding additional geotechnical and geological conditions affecting the Property. In particular, disputes have arisen with respect to (1) whether the planned expansion of the Ocean Trails Clubhouse (as identified in Revisions T and U to Conditional Use Permit 163) meets the geological standard of a Factor of Safety of at least 1.5, and (2) whether the current condition of the as-built golf course raises public safety issues that need to be addressed.

NOW, THEREFORE, in consideration of the mutual promises, obligations and covenants hereinafter set forth, the Parties hereto agree as follows:

Section 1. Incorporation of Recitals. Each and every recital set forth above is hereby incorporated by this reference as though set forth in full and expressly made a part of this Agreement.

Section 2. Selection of Panel Experts. City and Developer previously selected three experts who are the members of the Panel pursuant to the provisions of the First Agreement. They are Scott T. Kerwin, Eldon Gath, and Glenn Tofani.

Section 3. Impartial Review. The Parties hereby acknowledge and agree that although City shall retain the three experts who will comprise the Panel, the Panel shall be charged with providing an impartial analysis of certain geological and geotechnical data related to the Property and to resolve disagreements between City's geological and geotechnical experts and the experts that are performing work on behalf of Developer, pursuant to a written Scope of Work that was prepared jointly by the Parties, which is attached as Exhibit "A" hereto and incorporated herein by this reference.

The Parties further acknowledge and agree that the Panel shall be instructed not to meet, either individually or as a panel, privately with either the City, its geologists or its geotechnical engineers or the Developer, its geologists or its geotechnical engineers. City and Developer further agree that: (i) City and Developer shall limit their contact with the Panel to times when both Parties are present; (ii) City and Developer shall have equal input into the Panel's performance of its impartial review; and (iii) City and Developer shall provide joint instructions to the Panel. However, nothing in this Section 3 shall be construed to prevent the members of the Panel from meeting with one another privately to discuss the geological and geotechnical data, nor shall this Section 3 prevent the Panel from seeking additional input from the Parties, so long as such requested input shall be either communicated to the City and the Developer in a meeting at which both parties are present or in a writing, which is provided to both Parties simultaneously.

Section 4. Compensation for Panel. Upon execution of this Agreement, Developer shall deposit with the City the sum of $15,000. City shall hold these funds in a trust account established for the purpose of compensating the members of the Panel for their services rendered pursuant to this Agreement. When the balance in the trust account drops below $5,000, City shall notify Developer and request additional funds. Developer shall deposit such additional funds with City within ten (10) business days of receipt of the written request from the City. Notwithstanding the immediately preceding sentence, Developer shall not be in default hereunder if it fails to deposit such additional funds with City, but either party shall have the right to terminate this Agreement if Developer fails to deposit such additional funds with City, all as more specifically set forth in Section 5 below. Nothing herein shall be construed to permit Developer to fail to reimburse City for work that already has been performed by the Panel prior to the date of termination of this Agreement.

Section 5. Termination. If Developer fails to deposit any additional funds contemplated by Section 4 above or Section 8A below, then Developer shall not be default hereunder, but either Developer or City shall have the right to terminate this Agreement by providing at least thirty (30) days advance written notice to the other Party. If Developer fails to provide documentation that has been requested by the Panel within a reasonable period of time, as specified by the Panel, City shall have the right to terminate this Agreement by providing at least thirty (30) days advance written notice to the other Party, provided that such election shall be null and void if Developer provides such documentation prior to the expiration of the thirty-day period. Additionally, if this Agreement is terminated prior to the resolution of the geologic issues concerning the Property, the members of the Panel shall be compensated for the work that has been performed as provided in Section 4, and City again shall use its standard process of having its geologists and geotechnical engineers review the reports and recommendations of the Developer's experts as to those issues that had not been resolved by the Panel. Developer further acknowledges that if this Agreement is terminated prior to the resolution of all of the geologic issues concerning the Property, Developer shall not have the right to rely on this Agreement as to those issues that had not been resolved by the Panel, that the issue of the developability of particular areas of the Property may not have been resolved to City's satisfaction, and that City shall not be bound by this Agreement

as to those issues that had not been resolved by the Panel. In addition, Developer shall not be entitled to the issuance of any permits from City for which: (1) the geological analysis has not been completed to the Panel's satisfaction; or (2) work or improvements required by the Panel have not been completed by or on behalf of the Developer; (3) and as to any issue that had not been resolved by the Panel prior to the termination of this Agreement, until the geological analysis or work has been completed through the City's standard process to the satisfaction of the City's geologists and geotechnical engineers.

Section 5A.   Termination Upon Transfer. If, prior to resolution by the Panel of the issues in the Scope of Work, Developer sells or otherwise transfers the golf course or substantially all of the residential property contained within Tentative Tract Map No. 50666 to a person or entity that is not affiliated with or related to Developer, then Developer shall have the right to terminate this Agreement as to any issue not yet resolved by the Panel by providing at least thirty (30) days advance written notice to the City.

Section 6.   Scope of Panel's Review. The Panel shall provide an impartial analysis of the geological and geotechnical data related to the Property and shall resolve disagreements between City's geological and geotechnical experts and the experts that are performing work on behalf of Developer, pursuant to the Scope of Work or other written instructions or additional scope of work that are prepared jointly by the City and the Developer.

In addition to the issues concerning whether the residential lots within Tract 50666 can be developed, which are governed by the First Agreement, the Panel shall resolve the current disputes between the Parties' geologic and geotechnical experts regarding the proposed expansion of the Clubhouse and regarding the review of the golf course Clay Cap/As-Built Report. City and Developer hereby acknowledge and agree not to restrict the areas that the Panel may explore to make such determinations and to defer to the judgment of the Panel with respect to what additional geologic studies and tests, if any, should be conducted and what additional changes or improvements, if any, should be incorporated into the Project to address these issues and insure public safety.

The Panel also shall resolve any other area of dispute between the City's geological and geotechnical experts and the experts that are performing work on behalf of Developer, pursuant to any additional written scope of work or written instructions that are prepared jointly by the Parties.

Section 7.   Hold Harmless and Covenant not to Sue. The Parties hereby acknowledge that the Panel is being retained to resolve differences between the respective geological/ geotechnical experts retained by the Parties in order to allow Developer to complete the development of the Project, and that the Panel is solely providing impartial analysis and recommendations based on their combined professional judgment and are not preparing geotechnical designs for any future structures on the Property or insuring that the stability is sufficient to safely support such structures. The Parties further acknowledge that the members of the Panel are not in any way interested

 

in the development of the Property, either financially or otherwise, and would not provide the advice contemplated by this Agreement absent assurances by the Parties that they will not sue the Panel or its individual members based on the advice provided. Accordingly, City and Developer hereby covenant and agree not to sue the Panel or any of its individual members for any advice, opinions, conclusions or recommendations the Panel makes with respect to the geological and geotechnical conditions underlying the Property and the stability of the Property for development. Developer further agrees to indemnify, defend and hold the Panel and each member thereof harmless from any claims, losses, costs or damages that result from geological instability on the Property. The members of the Panel are third party beneficiaries of this Agreement, and the provisions of this Section 7 shall also run to the benefit of the members of the Panel as if made directly to them. This Covenant shall survive the termination of this Agreement.

Section 8. Legislative and Quasi-Judicial Authority Maintained. City and Developer hereby agree that this Agreement shall not affect the ability of the current City Council or any future City Council to make legislative or quasi-judicial determinations regarding the Project pursuant to the provisions of Federal or State law or the Rancho Palos Verdes Municipal Code.

Section 8A. Covenant to be Bound. City and Developer covenant and agree that any decisions rendered by the Panel regarding geologic or geotechnical issues that are directed to the Panel pursuant to the Scope of Work, or any subsequent scope of work, or joint instructions from the Parties, which otherwise would be made by the City's geologic or geotechncial experts, shall be binding on both City and Developer, including, but not limited to: (i) any decisions supporting, or disagreeing with, the recommendations or conclusions of one Party's geologic or geotechnical experts; and (ii) any conclusions or recommendations regarding geologic or geotechnical issues that are arrived at independently by the Panel, including any recommendations regarding additional studies, borings or analysis to be performed or improvements to be constructed, in response to the Scope of Work or other scope of work or written instructions prepared jointly by the Parties. The Parties further agree to take all steps reasonably necessary to diligently pursue and implement the recommendations of the Panel. Notwithstanding the foregoing, Developer shall not be in default hereunder if Developer elects not to incur any additional cost or expense as a result of any such recommendations.

Section 8B. Binding on Successors. This Agreement shall inure to the benefit of and bind the Parties to this Agreement and each of their respective heirs, assigns and successors in interest.

Section 8C. Limitation of Authority. Nothing herein shall be construed to grant the Panel any authority to obligate the City to incur any expense whatsoever; and except as expressly provided herein, nothing herein shall be construed to grant the Panel any authority to obligate the Developer to incur any expense whatsoever.

 

Section 9. Further Assurance. Each Party hereto agrees to take such actions, and to execute such certificates and other instruments, as may be necessary or appropriate to give effect to and carry out the provisions of this Agreement.

Section 10. Integration and Amendment.

10.1. This Agreement, and any documents incorporated herein by specific reference, represents the entire and integrated agreement between Developer and City with respect to the Peer Review to be conducted, as identified in the Scope of Work. This Agreement supersedes all prior negotiations, representations or agreements, whether oral or written, which are related to the Peer Review of the matters identified in the Scope of Work. However, this Agreement does not supercede or amend the First Agreement between the Parties.

10.2 This Agreement may not be amended, modified, or expanded except by a written instrument signed by each of the Parties hereto.

10.3 The City has entered into a separate agreement with each of the members of the Panel. Those three agreements are attached hereto as Exhibits B ,C and D and are incorporated herein by this reference, and shall not be amended without Developer's prior written consent. This Agreement shall not be amended, terminated or otherwise modified without thirty days advance written notice first being provided to all of the members of the Panel.

Section 11. Assignment. Neither Party shall assign its interest in this Agreement, or any portion of this Agreement, without the prior written consent of the other Party, which consent shall not be unreasonably withheld. Notwithstanding the foregoing, Developer shall have the right to assign this Agreement to any person or entity to whom Developer sells the golf course or substantially all of the residential portions of Tentative Tract Map No. 50666, provided that at least fifteen days prior to the effective date of such assignment, Developer shall give written notice thereof to City, and provided, further, that Developer shall deliver to City a copy of the proposed assignment and assumption agreement for City's review and approval, which shall not be unreasonably withheld, and Developer shall deliver a copy of the executed assignment and assumption agreement, in the form approved by the City, prior to the effective date of the assignment.

Section 12. Interpretation. This Agreement is deemed to have been prepared by both of the Parties hereto, after consulting with legal counsel, and any uncertainty or ambiguity herein shall not be interpreted against the drafter, but rather, if such ambiguity or uncertainty exists, shall be interpreted according to the applicable rules of interpretation of contracts under the substantive law of the State of California without reference to choice of law rules.

Section 13. Governing Law. This Agreement shall be construed and enforced in accordance with the substantive laws of the State of California without reference to

 

choice of law rules. Each of the parties hereto agrees to submit to the jurisdiction of the courts in the County of Los Angeles with respect to any action to enforce or interpret the terms hereof.

Section 14. Notices. Any notice required or authorized to be given by this Agreement shall, unless otherwise specified herein, be in writing, shall be served on the receiving Party either by personal delivery or deposit in the United States mail with first-class postage prepaid, and shall be addressed to the receiving party's specified contact person and address listed below, unless written notice is provided of a change of address as to either party. For the purposes of this Agreement, notices delivered in person shall be deemed communicated as of the date of actual receipt; notices sent via regular mail shall be deemed communicated as of three (3) days after deposit thereof in the United States mail, addressed as shown on the addressee's registry or certificate of receipt.

All notices served pursuant to this Agreement shall be addressed as follows:

If to City:

Les Evans, City Manager
City of Rancho Palos Verdes
30940 Hawthorne Boulevard
Rancho Palos Verdes, California 90275

*With a copy to:*
Carol W. Lynch, City Attorney
Richards, Watson & Gershon
355 South Grand Avenue, 40th Floor
Los Angeles, California 90071

If to Developer:

V.H. Properties Corporation
1 Ocean Trails Drive
Rancho Palos Verdes, California 90275
Attn: Jeff Kaplinski

*With a copy to:*
Kenneth Wolfson, Esq.
Latham & Watkins
650 Town Center Drive, 20th Floor
Costa Mesa, California 92626-1925

Either City or Developer may change its mailing address at any time by giving written notice of such change to the other party in the manner provided herein at least ten (10) days prior to the date such change is effected.

Section 15. Relationship of the Parties. No joint venture, partnership, employment, agency or similar arrangement is created between the parties by this Second Agreement.

Section 16. Waiver. Neither the failure nor any delay by any person or entity in exercising any right, power, or privilege under this Agreement or the documents referred to in this Agreement will operate as a waiver of such right, power, or privilege, and no single or partial exercise of any such right, power, or privilege will preclude any other or further exercise of such right, power, or privilege or the exercise of any other right, power, or privilege.

Section 17. Counterparts. This Second Agreement may be executed in several counterparts, each of which shall be an original and all of which shall constitute but one and the same instrument.

IN WITNESS WHEREOF, Developer and City have executed this Agreement as of the date first hereinabove written.

CITY OF RANCHO PALOS VERDES

By: ______________________
Peter C. Gardiner, Mayor

ATTEST:

______________________
Jo Purcell, City Clerk

V. H. PROPERTIES CORPORATION

By: ______________________
Name: VINCENT STELLIO
Title: E.V.P. DEVELOPMENT

By: ______________________
Name: MIKE VANDERGOES
Title: GENERAL MANAGER

 

# EXHIBIT "A"
## Peer Review Panel Scope of Work
## Review of the Clay Cap/As-Built Grading Report

**BACKGROUND:**

**The history of the requirement for a clay cap:**

- Supplement to original EIR (March 1992): In the Geologic Investigation Report (prepared by Leighton, April 22, 1991), which is in the appendix to the Supplemental EIR, it states, *"Mitigation Measures: The geotechnical hazard created by mass movements can be mitigated by a number of methods depending on site-specific geotechnical evaluation...Construction of the golf-course was determined to be feasible provided that the mass balance of the landslide was not adversely altered, buildings were constructed behind a design setback line, infiltration of water was minimized, and ground water levels were monitored. Similar mitigation measures may also be recommended for other mass movements on the subject site, but site-specific investigation is necessary for proper evaluation."*

- Adopted Mitigation Measure #9 states: *"All of the recommendations made by the project geologist, except as modified by the City Geologist, shall be incorporated into the design and construction of the project."* Note that the "Monitoring Milestone" for this mitigation measure indicates that implementation of this measure shall occur: *"Prior to issuance of Grading Permit and throughout the grading process"* (emphasis added).

- There are no specific adopted mitigation measures or conditions that were imposed by the City Council that require the 3' Clay Cap.

- After Council approval of the project, and prior to issuance of Grading Permits for development of the project, various detailed geologic reports were prepared by the Developer and approved by the City Geologist. It is within these reports that the detailed specifications of how the course was to be developed, including the specifications of the clay cap, various water monitoring measures and other geologic issues, were formulated.

- City Staff issued the Grading Permit in 1997. On the approved Grading Plans, a note indicates, *"I. Irrigated portions of the golf course are to receive a minimum 3 foot thick clay cap to control infiltration of surface water. The clay cap shall have a permeability constant of 3x10(-7) cm/sec or less (hereinafter referred to as the 'Clay Cap')."*

**POSITIONS OF EACH FIRM**

**Both Geological Firms (Converse Consultants and Cotton Shires Associates) Agree that:**

- The Clay Cap was specified on the Grading Plan to be installed under all irrigated golf course areas as noted above.
- It is uncertain whether the Clay Cap underlies all of the irrigated portions of the golf course.
- The As-Built Grading Report, prepared by the Developer's Geologist, needs to be approved by the City Geologist prior to opening the 18-hole golf course. The Clay Cap and Monitoring Program are components to the As-Built Grading Report.

**Cotton Shires Associates (CSA) believes that:**

- Although the Clay Cap may have been compromised in various areas of the Golf Course, this is not a significant risk to most of the Golf Course, but that there is a higher risk in the areas of Holes 10 and 11, which are located in the vicinity of Landslides A and B.
- There are monitoring methods that should be implemented to ensure that areas of high risk (Holes 10 and 11) do not pose a risk to public safety.
- As envisioned when this project was first approved, safety for the public, golf course and residential property is dependent upon a combination of project design aspects which includes not only the Clay Cap, but also water monitoring and ground movement monitoring.
- The following measures are intended to allow installation of monitoring wells at appropriate depths, and that if an area does move, a warning will be provided via both the use of the inclinometers and the monitoring wells.

    1. Install 2 Inclinometers in the vicinity of Hole 10/Landslide B. The purpose is to measure ground movement so as to warn the public, allow mitigative action and to close this portion of the course if movement causes a risk to public safety or improvements.
    2. Repair Monitoring Well #1, which is also located near Landslide B. CSA believes that MW1 is at the wrong depth and not suitable for monitoring purposes. CSA is recommending a large diameter boring so that both CC and CSA can verify the location of the bentonite layer so as to accurately determine the elevation of the base of the well. The goal is to have an

effective monitoring well. Once the bentonite layer is found, CC will have to perform supplemental stability calculations to determine the risk to the sewer line, protocol to address excessive or accelerating movement, and action levels for the monitoring well.

3. Repair Monitoring Well #3, which is located behind former Landslide C. CSA believes that it is also installed at the wrong depth; however everyone agrees to the location of the bentonite layer in this area so there will be no boring required - they only need to re-install the well at the proper elevation within the hole.

4. Repair Monitoring Well #6, which is located near Hole #17. CSA believes this well is also at the wrong depth. This will likely require a large diameter boring to determine where the bentonite layer is and what the proper elevation of the well should be - this is similar to MW#1 (see 2 above).

5. Prepare revised stability calculations for Monitoring Well #2, which is located near green of hole #1 and tee of hole #2. CSA believes that the calculations were done incorrectly and they just need to prepare revised calculations.

6. Submit as-built plans and any other data on Lakes #8 and #16, which have been in existence since the project was built and were not affected by Landslide C (the lake that was affected by Landslide C and is being re-built is Lake #9). The information would be submitted to the City's Lake Consultant, who has been reviewing the plans for Lake #9 and the waterfalls, to see if he has any comments for improving the lakes. It is not CSA's intent to have Ocean Trails re-build these lakes. However, there may be some minor modifications that are needed to improve these lakes. Alternatively, the Lake Consultant may say they are fine and nothing needs to be done. CSA is simply recommending that the Lake Consultant review the data and provide an opinion.

- If these measures are implemented, and nothing unexpected shows up in the analysis/borings, then CSA will sign off on the golf course.

**Converse Consultants (CC) believes that:**

- The items requested by CSA are unnecessary. The project's current as-built clay cap and monitoring wells and as-monitored conditions are safe for the public and golf course.

- Converse believes that CSA's recommendations regarding monitoring wells and slope inclinometers are unfounded and technically unwarranted. All monitoring well locations and depth intervals were submitted to Cotton, Shires and Associates Inc. (CSA) for review and approval prior to well installation.


Monitoring well depths were adjusted per CSA requests. Interpreted depths and elevations of the UBL and LBL layers were based on the best information and data available at the time the wells were designed and installed in 1998 and 1999.

CSA now believes that Monitoring Well groups MW-1, MW-3 and MW-6 were constructed to wrong depths for the UBL and LBL layers. No technical data has been presented by CSA to indicate the monitoring well depths are wrong. CSA's interpretation of the site's geologic structure has been inconsistent and does not even acknowledge the existence of the LBL layer.

- The specific reasons why CSA's requested recommendations are unnecessary are as follows (referenced according to numbered items above):

  1. Converse Consultants (Converse) believes that it is unnecessary and a waste of the developer's money to install 2 new inclinometers in Hole 10 above Landslide "B". The effect of existing cracks is insignificant. The extension cracks are limited in both area and spatial extent. The cracks have been observed and remain unchanged since the 1971 Converse report. The area above the extension crack is stable. There is no need for inclinometers in Hole 10.

  2. Converse believes that Monitoring Well Group MW-1 does not need repair. As documented in the 11/27/02 Converse report, the well-screen bottoms are only a couple feet above the interpretable UBL and LBL elevations. Monitoring Well Group MW-1 is located in a stable area. As described in the 3/22/04 Converse report, the stability in the general area of MW-1 and beyond is three-dimensional in nature. In Converse's opinion, CSA's recommendation regarding MW-1 was based on inappropriate stability analyses of a geologic cross-section that is inconsistent with available geologic data.

  3. Converse believes that no repair for Monitoring Well MW-3 is necessary, however, this well group needs to have loose soils cleaned-out that fell in during construction after completion of the Landslide "C" repair. MW-3 is located in a very stable area with a factor of safety of more than 1.5. In addition, Landslide "C" repair provides horizontal drains and backslope subdrains beneath the general area of MW-3. Water accumulation is not a concern even though the bottom of well casing of MW-3U is about 2 to 4 feet below the interpreted UBL, since little or no accumulation of water above the UBL is anticipated.

  4. Converse believes no repair for MW-6 is necessary. Well screens of MW-6 were installed to the depth ranges requested by CSA. As shown in Converse's 11/27/02 report, the bottom of MW-6U is about 1 foot above the

interpreted UBL. This small depth differential is inconsequential as demonstrated in Converse's 11/27/02 report, since MW-6 is located in a stable area. As described in Converse's 11/27/02 report, the calculated factor of safety for the case of 25' water accumulated on top of UBL is more than 1.4. We strongly reject CSA's recommendation of drilling a large diameter boring for MW-6 and performing stability analysis. In Converse's opinion, CSA's understanding of the site conditions in the Ocean Trails Golf Course Area is questionable.

5. Monitoring Well MW-2 is located above Landslide "C" and is in a very stable area after the Landslide "C" was repaired and buttressed. In our opinion, there is no need to perform additional stability analysis. Converse's Landslide "C" repair design report, and all the geologic evaluation reports for the Golf Course Modifications (Converse's reports dated 2/17/03, 5/8/03 and 6/3/04) have presented updated stability analyses for this general area. In our opinion, CSA has presented no technical basis in making such a request.

6. Converse understands that Lake No. 8 and Lake No. 16 design plans were reviewed and approved by the City of Rancho Palos Verdes and that Lake No. 8 and Lake No. 16 have been constructed according to the plans. Converse tested and approved both the clay cap and subgrade as it was installed under Lake Nos. 8 and 16. In addition, Converse observed and tested area drain pipe trenching and backfill when all the area drain pipes were raised above the lake water levels of each lake. Converse agrees that an as-built report of the area drain pipes that were raised should be submitted. Lake Nos. 8 and 16 are in stable areas and we do not see any need to have any additional review performed of the approved lake design since the lakes have already been constructed.

- Doing more work will only lead to additional studies/issues/questions that CSA will pose with no hope for resolution or project completion in sight.

**SCOPE OF WORK:**

Based upon this information, the dispute between CSA and CC is whether Ocean Trails should be required to do the work outlined by CSA. This is what the Peer Panel needs to evaluate, not whether the clay cap should be completed per the original specifications. The City's Geologist already has indicated, in the December 21, 2001 letter, that the Developer does not have to meet that specification. Instead, the real issue is: whether or not CSA is requesting too much of CC.

**Specific Questions/Issues to be Addressed by the Peer Panel:**

1. Does the current condition of the as-built golf course raise public safety issues that need to be addressed, as discussed in the letter from Cotton Shires Associates dated April 8, 2004?

2. If yes, what additional information is necessary?

3. If no, then no further work or studies are necessary.

**Schedule:**

Day 1: Reports provided to Peer Panel (Ocean Trails to provide CC reports while City provides CSA reports)

Week 3: Panel meeting/conference call to determine the need for consultant Q&A meeting or preparation of written review questions.

Week 4: Finalize reviews.

Week 5: Meet with consultants or submit review questions for consultant response.

Week 7: Await response from consultants.

Week 8: Review consultant's responses. Panel meeting/call to finalize Panel concurrence or rejection of consultant responses.

Week 9: Submit Panel response.

## Peer Review Panel Scope of Work
## Review of the Clubhouse Expansion

**BACKGROUND:**

- Conditional Use Permit No. 163, originally approved by the City Council in 1992, includes the following condition of approval:

  *"C-1: The golf clubhouse shall be located west of the terminus of Street "A" (Paseo Del Mar extension), in the area generally described as east of Forrestal Canyon, south of the single family Lot Nos. 6, 7, and 8 located on Street "B", and north of Half Way Point Park, as shown on "Site Plan for Conditional Use Permit Amended Map No. 2," dated June 19, 1996, prepared by ESCO Engineering Service Corporation, and dated as received by the City on August 2, 1996. No portion of the golf course clubhouse shall be located in areas currently zoned Open Space Hazard (OH). A minimum factor of safety of 1.5 shall be demonstrated for the clubhouse*



*structure. If the developer is unable to provide for a minimum factor of safety of 1.5 using mechanical methods, including but not limited to de-watering wells, or if the clubhouse location is modified for any other reason, the developer shall submit an application for a revision to this Conditional Use Permit, for review and approval by the Planning Commission and City Council prior to recordation of any Final Map."*

- The existing Clubhouse Building was reviewed and permitted on October 3, 1998. The first Temporary Certificate of Use and Occupancy was issued on October 25, 1999, while the final Certificate of Use and Occupancy was issued on April 30, 2001. Prior to issuance of Building Permits, a 1.5 Factor of Safety was identified for the proposed Building. The Clubhouse Building was reviewed, approved and permitted for grading and construction by the City.

- Since the Clubhouse Building was constructed, Landslide C failed (June 2, 1999) and subsequent issues arose regarding Landslide A and the location of the foundation setback line affecting Tract No. 50666. The Landslide "C′ failure was investigated by CC and CSA with 28 large diameter borings and 3 corehole borings to provide subsurface information on the mechanism of failure, geologic structure and determine how to repair it. The Landslide "C" failure was then repaired by excavating and removing the UBL slip surface and constructing a large geosynthetic reinforced compacted fill buttress to stabilize the upslope areas.

- In November 2003, the City Council approved a request for an expansion to the Clubhouse Building. When the Council originally approved the Clubhouse Expansion in August 2003, and an amendment in November 2003, the Staff Reports noted that the condition (C-1 above) requiring a 1.5 FOS would continue to be enforced and would need to be satisfied prior to issuance of any building permits for the proposed expansion.

- Converse Consultants submitted two reports addressing the Factor of Safety for the Clubhouse Building Expansion. Cotton Shires Associates submitted one review response to the two reports.

**POSITIONS OF EACH FIRM**

**Converse Consultants (CC) believes that:**

- Detailed subsurface information and stability analyses have been submitted to show that there is a 1.5 factor of safety for the Clubhouse Expansion. Converse Consultants (CC), submitted their first report addressing the FOS on February 26, 2004. The report, using a two dimensional stability Analysis" identified a FOS of 1.45 along one of 3 cross-sections provided in the report, however, the report indicated that overall there would be a FOS greater than 1.5 for the expansion since the stability of the Clubhouse is three dimensional in nature. CC submitted a second report on March 22, 2004, which included a more detailed three-


dimensional stability analysis indicating that the FOS was 2.61.  Three dimensional stability analyses were also performed using the CSA structural contour model indicating a FOS of about 3.2.

- There is no justification for doing the additional sub-surface investigation requested by CSA (see below).  Extensive amounts of subsurface data has been gathered to date and is more than sufficient in showing that there will be at least a 1.5 FOS for the expansion.  Converse has also indicated that they believe the data that was used to support the original approved location of the Clubhouse, with a FOS 1.5, should be more than sufficient, and that the expansion is relatively minor given the size of the Clubhouse.

- Converse believes that no additional exploration is necessary.  The geologic model presented in the two reports for the proposed Clubhouse expansion were based on the more up-to-date information generated from the large diameter borings downhole logged for the Landslide "C" repair investigation as well as the direct survey data of the exposed UBL in the deep slot cut excavations and in the mouth of Forrestal Canyon.  CSA has ignored this direct survey data of the UBL in their structural model and analysis. Converse believes that CSA has misinterpreted the geologic model for the Clubhouse expansion area.

- Converse has used the approved shear strength parameters that are the same as those used for the Clubhouse. These strength values were approved by the City and CSA at the time the original Clubhouse was approved.  Converse does not understand and does not agree with CSA's recommendation requiring Converse to "revise calculations by using appropriate parameters".

**Cotton Shires Associates (CSA) believes that:**

- There is not sufficient sub-surface data to support the interpretations that CC has provided in their recent reports for the Clubhouse expansion. Additionally, although the geology previously presented by CC for the existing Clubhouse Building indicated a 1.5 FOS, new data generated from the Landslide C repair and review of Landslide A needs to be considered when analyzing the FOS for the Clubhouse expansion. Further, the most recent geologic model presented by CC differs from the previous model and sufficient subsurface data has not been presented to support this model.  CSA believes that there is a sufficient lack of subsurface data regarding the depth and inclination of the upper bentonite layer between the park and Forrestal canyon.

  To resolve this issue, CSA is recommending that CC conduct 3 additional large diameter borings to support CC's interpretations.  One of the recommended large diameter borings would be satisfied by the large diameter boring needed to address issues pertaining to the Clay Cap/As-Built report.  In addition, CSA has recommended that once the additional subsurface data has been collected,




CC revise their calculations by using appropriate established strength parameters, address the affects of existing retaining walls in the area on the proposed structure's foundation design, and address issues related to the installation of perimeter drains.

**SCOPE OF WORK:**

Based upon this information, the dispute between CSA and CC is whether Ocean Trails should be required to do the additional exploratory work outlined by CSA.

**Specific Questions/Issues to be Addressed by the Peer Panel:**

1. With respect to the Clubhouse expansion identified in Conditional Use Permit No. 163 - Revision U, the Peer Review Panel shall determine whether Converse Consultants has presented sufficient data, when considered with all other presently known project data, to demonstrate to the accepted level of geological certainty ordinarily required by professionals in this discipline, to establish that the proposed Clubhouse expansion meets a 1.5 Factor of Safety?
    a. If the answer is "yes" the City shall issue the building permits for the Clubhouse expansion.
    b. If the answer is "no" then answer question 2 below.

2. What additional information is necessary or, what additional work is needed to be done to demonstrate a Factor of Safety of 1.5?

**Schedule:**

Day 1: Reports provided to Peer Panel (Ocean Trails to provide CC reports while City provides CSA reports)

Week 3: Panel meeting/conference call to determine the need for consultant Q&A meeting or preparation of written review questions.

Week 4: Finalize reviews.

Week 5: Meet with consultants or submit review questions for consultant response.

Week 7: Await response from consultants.

Week 8: Review consultant's responses. Panel meeting/call to finalize Panel concurrence or rejection of consultant responses.

Week 9: Submit Panel response.



Copy

**FIRST AMENDMENT TO AGREEMENT**

**FOR PROFESSIONAL SERVICES**

THIS FIRST AMENDMENT TO AGREEMENT FOR PROFESSIONAL SERVICES is made and entered into as of this 3rd day of August, 2004, by and between the City of Rancho Palos Verdes, a municipal corporation, hereinafter designated as "City", and AMEC Earth & Environmental, Inc., hereinafter designated "Consultant."

**RECITALS**

A. City previously entered into an agreement with Consultant, dated September 2, 2003 ("Agreement"), so that one of Consultant's employees, Mr. Scott Kerwin, could serve as a member of a panel of three experts ("Panel"), which will provide City and V.H. Properties Corporation ("Developer") with independent third-party review of certain geological and/or geotechnical data that has been prepared in connection with the golf course and single-family development commonly known as Ocean Trails (the "Ocean Trails Project").

B. City and Developer have entered into a Second Agreement so that the Panel's scope of work could be expanded to include other geologic issues affecting the Ocean Trails Project.

C. City and Consultant wish to amend the Agreement to incorporate the provisions of the Second Agreement between Developer and City into this Agreement.

 

NOW, THEREFORE, in consideration of performance by the parties of the mutual promises, covenants, and conditions herein contained, the parties hereto agree as follows:

**Section 1.** Recital A of the Agreement is hereby amended to read as follows:

**A.** City desires to utilize the services of one of Consultant's employees, Mr. Scott Kerwin, to be a member of a panel of three experts that will provide City and V.H. Properties Corporation ("Developer") with independent third-party review of certain geological and/or geotechnical data that has been prepared in connection with the golf course and single-family development commonly known as Ocean Trails (the "Ocean Trails Project"). City and Developer have entered into an Agreement regarding this process, which is attached hereto as Exhibit "A" and incorporated herein by this reference. City and Developer subsequently entered into a Second Agreement regarding this process, which is attached hereto as Exhibit "A-1" and incorporated herein by this reference.

**Section 2.** Except as expressly amended by this First Amendment to Agreement For Professional Services, all of the provisions of the Agreement shall remain in full force and effect.

IN WITNESS WHEREOF, the parties, through their respective authorized representatives, have executed this Agreement as of the date first written above.

**CITY OF RANCHO PALOS VERDES**

By: ______________________
Mayor

**ATTEST:**

By: ______________________
City Clerk

**AMEC EARTH & ENVIRONMENTAL, INC.**
**"CONSULTANT"**

By: ______________________
Douglas Bell – Unit Manager 8-16-04

By: ______________________
D.A. Dries, VP

Copy

**FIRST AMENDMENT TO AGREEMENT**

**FOR PROFESSIONAL SERVICES**

THIS FIRST AMENDMENT TO AGREEMENT FOR PROFESSIONAL SERVICES is made and entered into as of this 3rd day of August, 2004, by and between the City of Rancho Palos Verdes, a municipal corporation, hereinafter designated as "City", and Earth Consultants International, hereinafter designated "Consultant."

**RECITALS**

**A.** City previously entered into an agreement with Consultant, dated September 2, 2003 ("Agreement"), so that one of Consultant's employees, Mr. Eldon Gath, could serve as a member of a panel of three experts ("Panel"), which will provide City and V.H. Properties Corporation ("Developer") with independent third-party review of certain geological and/or geotechnical data that has been prepared in connection with the golf course and single-family development commonly known as Ocean Trails (the "Ocean Trails Project").

**B.** City and Developer have entered into a Second Agreement so that the Panel's scope of work could be expanded to include other geologic issues affecting the Ocean Trails Project.

**C.** City and Consultant wish to amend the Agreement to incorporate the provisions of the Second Agreement between Developer and City into this Agreement.

NOW, THEREFORE, in consideration of performance by the parties of the mutual promises, covenants, and conditions herein contained, the parties hereto agree as follows:

**Section 1.** Recital A of the Agreement is hereby amended to read as follows:

**A.** City desires to utilize the services of one of Consultant's employees, Mr. Eldon Gath, to be a member of a panel of three experts that will provide City and V.H. Properties Corporation ("Developer") with independent third-party review of certain geological and/or geotechnical data that has been prepared in connection with the golf course and single-family development commonly known as Ocean Trails (the "Ocean Trails Project"). City and Developer have entered into an Agreement regarding this process, which is attached hereto as Exhibit "A" and incorporated herein by this reference. City and Developer subsequently entered into a Second Agreement regarding this process, which is attached hereto as Exhibit "A-1" and incorporated herein by this reference.

**Section 2.** Except as expressly amended by this First Amendment to Agreement For Professional Services, all of the provisions of the Agreement shall remain in full force and effect.

IN WITNESS WHEREOF, the parties, through their respective authorized representatives, have executed this Agreement as of the date first written above.

**CITY OF RANCHO PALOS VERDES**

By: ______________________
Mayor

**ATTEST:**

By: ______________________
City Clerk

**EARTH CONSULTANT'S INTERNATIONAL "CONSULTANT"**

By: ______________________
Eldon Gath
President

By: ______________________
Vice-President

R6876\0001\745755.4

Copy

**FIRST AMENDMENT TO AGREEMENT**

**FOR PROFESSIONAL SERVICES**

THIS FIRST AMENDMENT TO AGREEMENT FOR PROFESSIONAL SERVICES is made and entered into as of this 3rd day of August, 2004, by and between the City of Rancho Palos Verdes, a municipal corporation, hereinafter designated as "City", and Geokinetics, Inc., hereinafter designated "Consultant."

**RECITALS**

A. City previously entered into an agreement with Consultant, dated September 2, 2003 ("Agreement"), so that one of Consultant's employees, Mr. Glenn Tofani, could serve as a member of a panel of three experts ("Panel"), which will provide City and V.H. Properties Corporation ("Developer") with independent third-party review of certain geological and/or geotechnical data that has been prepared in connection with the golf course and single-family development commonly known as Ocean Trails (the "Ocean Trails Project").

B. City and Developer have entered into a Second Agreement so that the Panel's scope of work could be expanded to include other geologic issues affecting the Ocean Trails Project.

C. City and Consultant wish to amend the Agreement to incorporate the provisions of the Second Agreement between Developer and City into this Agreement.

NOW, THEREFORE, in consideration of performance by the parties of the mutual promises, covenants, and conditions herein contained, the parties hereto agree as follows:

**Section 1.**   Recital A of the Agreement is hereby amended to read as follows:

**A.**   City desires to utilize the services of one of Consultant's employees, Mr. Glenn Tofani, to be a member of a panel of three experts that will provide City and V.H. Properties Corporation ("Developer") with independent third-party review of certain geological and/or geotechnical data that has been prepared in connection with the golf course and single-family development commonly known as Ocean Trails (the "Ocean Trails Project"). City and Developer have entered into an Agreement regarding this process, which is attached hereto as Exhibit "A" and incorporated herein by this reference. City and Developer subsequently entered into a Second Agreement regarding this process, which is attached hereto as Exhibit "A-1" and incorporated herein by this reference.

**Section 2.**   Except as expressly amended by this First Amendment to Agreement For Professional Services, all of the provisions of the Agreement shall remain in full force and effect.

IN WITNESS WHEREOF, the parties, through their respective authorized representatives, have executed this Agreement as of the date first written above.

**CITY OF RANCHO PALOS VERDES**

By: ______________________
Mayor

**ATTEST:**

By: ______________________
City Clerk

**GEOKINETICS**
**"CONSULTANT"**

By: ______________________

By: ______________________