1

STAYED (JS-6)

2

3

4

5

6

7

UNITED STATES DISTRICT COURT

8

CENTRAL DISTRICT OF CALIFORNIA

9

10

11

VH PROPERTY CORP. and VHPS LLC,          )   CASE NO. CV-09-00298  MMM (PJWx)

12                                                                              )

Plaintiffs,          )   ORDER GRANTING PLAINTIFFS'

13                                                                              )   MOTION TO REMAND

vs.                                  )

14                                                                              )

CITY OF RANCHO PALOS VERDES;             )

15   COTTON, SHIRES AND ASSOCIATES,           )

INC.; WILLIAM COTTON;                    )

16   HELENSCHMIDT GEOTECHNICAL               )

INC.; STANLEY HELENSCHMIDT;              )

17   GEOKINETICS INC. a/k/a APPLIED           )

GEOKINETICS; GLENN TOFANI; and           )

18   DOES 1-100,                             )

                                            )

19                 Defendants.               )

                                            )

20

21          On December 18, 2008, plaintiffs VH Property Corp. and VHPS LLC (collectively,

22   "VH") filed a complaint against the City of Rancho Palos Verdes (the "City"); Cotton, Shires and

23   Associates, Inc. ("CSA"); William Cotton; Helenschmidt Geotechnical, Inc. ("HGI"); Stanley

24   Helenschmidt; Geokinetics, Inc. ("Geokinetics"); and Glenn Tofani in state court.    VH's

25   complaint, which arises out of the City's alleged denial of VH's land development applications,

26   asserts claims for violation of due process under both the federal and California constitutions,

27   violation of equal protection under both the federal and California constitutions, fraud, breach of

28   contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, and

intentional interference with prospective economic advantage against all defendants; inverse condemnation, taking of property without just compensation, and mandamus against the City; and unfair business practices against CSA, Cotton, HGI, Helenschmidt, Geokinetics, and Tofani.  On January 14, 2009, defendants removed the case to federal court pursuant to 28 U.S.C. §§ 1331 and 1441(b).  Plaintiffs filed a motion to remand on February 13, 2009.  Plaintiffs assert that the court should decline to exercise jurisdiction based on *Pullman* and *Burford* abstention.

## I.  FACTUAL BACKGROUND

VH is the owner various real property in the City, including the Trump National Golf Club.[1]  VH wants to develop the property by constructing sixteen homes in an area now used as a driving range; by constructing four homes landward from the existing clubhouse; by constructing a terrace on the clubhouse; and by maintaining ficus trees on the property.[2]  VH must obtain the City's permission before proceeding with these projects.[3]  VH alleges that  the City has unreasonably and pretextually withheld its permission despite knowledge that the proposed projects are safe.[4]  As a result, VH asserts, it has been required "to spend millions of dollars on unnecessary, repetitive, unreasonable, and unlawful geologic and geotechnical studies and reviews, and in satisfaction of other unnecessary, repetitive, unreasonable, and unlawful bureaucratic requirements."[5]  VH alleges that the City does not hold other property owners to the standards it has imposed on VH.[6]  In particular, VH contends that the City has acted unreasonably in requiring that VH demonstrate the existence of a "1.5 safety factor" before undertaking

---

[1]Complaint, ¶ 19.

[2]*Id.*, ¶ 20.

[3]*Id.*, ¶ 21.

[4]*Id.*, ¶¶ 23-26.

[5]*Id.*, ¶ 27.

[6]*Id.*, ¶¶ 33-38.

1   development of the property.[7]

2       The City counters that VH's property is located in an active landslide area.[8]  The City

3   notes that, in 1999, the eighteenth hole of VH's golf course suddenly collapsed and fell into the

4   Pacific Ocean.[9]  It states that "the collapse of the 18th hole. . . into the Pacific Ocean has led to

5   closer examination of the geotechnical details [of VH's proposed development projects], to assure

6   that occupied homes do not suffer the same fate."[10]  It asserts that it has nonetheless approved

7   most of VH's development applications.  Regarding VH's intent to construct homes on the present

8   location of the driving range and landward of the clubhouse, the City states that it has not yet

9   received applications from VH for such projects. The City contends that it has already granted VH

10  permission to construct a terrace on the clubhouse, and that the ficus trees violate the City's

11  general prohibition against maintaining trees that block views of the ocean from neighboring

12  residential properties.[11]

13      Defendants CSA and HGI are geological consulting firms that were retained by the City

14  to review VH's proposed development projects.[12]  VH asserts that it has been required to pay

15  more than $3,000,000 for work performed by CSA and HGI.[13]  Tofani is a member of a peer

16  review panel organized to evaluate CSA and HGI's conclusions because of the dispute between

17

18

19

20      [7]Memorandum of Points and Authorities in Support of Motion to Remand Action to State Court ("Pl.'s Mot.") at 2-3.

21

22      [8]Defendant City of Rancho Palos Verdes' Memorandum of Points and Authorities in Opposition to Motion to Remand Action to State Court ("City's Opp.") at 2.

23      [9]*Id.*

24      [10]*Id.*

25      [11]*Id.*

26

27      [12]*Id.*, ¶¶ 4, 6.  Cotton is a principal of CSA; Helenschmidt is a principal of HGI (*Id.*, ¶¶ 5, 7.)

28      [13]*Id.*, ¶ 49.

1   VH and the City.[14]  VH alleges that it has spent $380,000 for work performed by Tofani and his

2   company.[15]

3        VH's complaint pleads claims for inverse condemnation, taking of property for public use

4   without just compensation, and mandamus against the City; violation of due process and equal

5   protection under the federal and California constitutions, fraud, breach of contract (as a third-party

6   beneficiary), breach of the implied covenant of good faith and fair dealing, unjust enrichment, and

7   intentional interference with prospective economic advantage against all defendants; and unfair

8   business practices against all defendants except the City.

9

10                              **II.  DISCUSSION**

11   **A.     Legal Standard Governing *Pullman* Abstention**

12        The *Pullman* abstention doctrine allows a federal court to postpone the exercise of federal

13   jurisdiction when "a federal constitutional issue . . . might be mooted or presented in a different

14   posture by a state court determination of pertinent state law."  *C-Y Development Co. v. City of*

15   *Redlands*, 703 F.2d 375, 377 (9th Cir. 1983) (quoting *County of Allegheny v. Frank Mashuda*

16   *Co.*, 360 U.S. 185, 189 (1959)); see also *Pearl Investment Co. v. City and County of San*

17   *Francisco*, 774 F.2d 1460, 1462 (9th Cir. 1985) (under the *Pullman* abstention doctrine, courts

18   should abstain in cases presenting a federal constitutional question if constitutional adjudication

19   could be avoided or the constitutional question narrowed by a state court ruling on an uncertain

20   question of state law).  In the Ninth Circuit, three criteria must be met before *Pullman* abstention

21   is appropriate:

22              " (1) The complaint touches a sensitive area of social policy upon

23

24   ──────────────

25        [14]*Id.*, ¶ 50; Pl.'s Mot. at 1, 3.  Geokinetics is Tofani's company.  (Complaint, ¶ 9.)  The peer review panel consists of three members.  VH and the City each selected one member, and

26   these members then chose Tofani as the third member.  VH contends that Tofani is not neutral, however, because he previously served as an expert witness for the City in a different land use

27   dispute.  (Pl.'s Mot. at 3-4.)

28        [15]Complaint, ¶ 52.

                                              4

1  which the federal courts ought not to enter unless no alternative to its

2  adjudication is open.

3    (2) Such constitutional adjudication plainly can be avoided if a

4  definitive ruling on the state issue would terminate the controversy.

5    (3) The possibly determinative issue of state law is doubtful."

6  *Sinclair Oil Corp. v. County of Santa Barbara*, 96 F.3d 401, 409 (9th Cir. 1996); see also *Smelt*

7  *v. County of Orange*, 447 F.3d 673, 679 (9th Cir. 2006) (enumerating factors); *Canton v. Spokane*

8  *School District No. 81*, 498 F.2d 840, 845 (9th Cir. 1974) (same).

9    Since "[t]he doctrine of abstention . . . is an extraordinary and narrow exception to the

10  duty of a District Court to adjudicate a controversy," it is properly invoked only "where the order

11  to parties to repair to the state court would clearly serve an important countervailing interest."

12  *Canton*, 498 F.2d at 845.  Thus, courts should abstain under *Pullman* only "where principles of

13  comity and federalism justify postponing the exercise of jurisdiction that Congress conferred upon

14  federal courts."  *Pearl Investment Co.*, 774 F.2d at 1462.

15    **1.    Whether VH's Complaint Involves A Sensitive Area of Social Policy**

16    The Ninth Circuit has consistently and repeatedly held that "land use planning is a sensitive

17  area of social policy that meets the first requirement for *Pullman* abstention."  *San Remo Hotel*

18  *v. City and County of San Francisco*, 145 F.3d 1095, 1105 (9th Cir. 1998) (quoting *Sinclair Oil*,

19  96 F.3d at 401 (internal quotation marks omitted) (quoting *Kollsman v. City of Los Angeles*, 737

20  F.2d 830, 833 (9th Cir.1984)), and citing *Rancho Palos Verdes Corp. v. City of Laguna Beach*,

21  547 F.2d 1092, 1094-95 (9th Cir. 1976), and *Sederquist v. City of Tiburon*, 590 F.2d 278, 281-82

22  (9th Cir.1978)); see also *Heffner v. Young*, 227 Fed.Appx. 586, 587 (9th Cir. Apr. 3, 2007)

23  (Unpub. Disp.); *Columbia Basin Apartment Ass'n v. City of Pasco*, 268 F.3d 791, 802 (9th Cir.

24  2001); *Cucamongans United for Reasonable Expansion v. City of Rancho Palos Verdes*, No.

25  98-55262, 2000 WL 61312, *1 (9th Cir. Jan. 21, 2000) (Unpub. Disp.); *Pearl Investment Co.*,

26  774 F.2d at 1463-64; *Bank of America National Trust and Savings Ass'n v. Summerland County*

27  *Water*, 767 F.2d 544, 546 (9th Cir. 1985); *C-Y Development*, 703 F.2d at 377; *Santa Fe Land*

28  *Improvement Company v. City of Chula Vista*, 596 F.2d 838, 840 (9th Cir. 1979).  Because this

1   case concerns a dispute over the City's land use planning policies, the court concludes the first

2   requirement for *Pullman* abstention is met.[16]

3          **2.**     **Whether a State Court Ruling May Narrow the Constitutional Issues**

4       The second prong for *Pullman* abstention is met where "[a] state law question . . . has the

5   potential of at least altering the nature of the federal constitutional questions." *C.Y. Development*,

6   703 F.3d at 378; see also *Sinclair Oil*, 96 F.3d at 409 ("For *Pullman* purposes . . . it is sufficient

7   if the state law issues might 'narrow' the federal constitutional questions," citing *Pearl Investment*

8   *Co.*, 774 F.2d at 1464). In land use cases, the Ninth Circuit has frequently found this requirement

9   satisfied where a favorable decision on a state law claim would provide plaintiff with some or all

10   of the relief he seeks.

11       In *Sinclair Oil*, plaintiff challenged Santa Barbara County's adoption of a community plan

12   that reduced the number of residences that could be developed on its property. *Sinclair Oil*, 96

13   F.3d at 405. Plaintiff asserted, among other things, that adoption of the plan constituted a taking

14   under the federal and state constitutions. The Ninth Circuit concluded that the second requirement

15   for *Pullman* abstention was met "because, '[g]iven [an] opportunity, a state court might avoid the

16   federal constitutional issues by deciding that an illegal taking under the California Constitution

17   has occurred.'" *Id.* (quoting *Sederquist*, 590 F.2d at 282). As the court explained, the potential

18   for a narrowing of the issues need not be certain:

19         "Certainly, if the California courts provide Sinclair just compensation for a taking

20         under state law, it might be unnecessary to address the oil company's federal taking

21         claim. Of course, adjudication of the state claims is not absolutely certain to obviate

22         the need for considering the federal constitutional issues. Sinclair might, for

23         example, object to the amount of compensation received. For *Pullman* purposes,

24         though, it is sufficient that the state law issues might 'narrow' the federal constitutional questions. Resolution of the California law issues would most certainly narrow a

25   federal court's constitutional inquiry in this case." *Id.*

26       Similarly, in *C-Y Development*, plaintiff challenged the City of Redlands' denial of its

---

[16]Defendants concede that this requirement is met. (City's Opp. at 3 n. 1.)

applications for building permits, seeking, among other things, a writ of mandamus requiring the city to issue the permits. *C-Y Development*, 703 F.3d at 378. The court held that the second requirement for *Pullman* abstention was met, observing that a writ of mandate directing the city to issue the permits would moot some of the federal issues in the case. *Id*. at 380. The fact that "following such hypothetical state adjudication [plaintiff] might return to federal court to seek damages for the alleged temporary deprivation of its property rights" did not render *Pullman* abstention inappropriate. *Id*.

Here, it is possible that resolution of VH's state constitutional takings claim in its favor will obviate the need to rule on its federal claims, particularly if VH finds the compensation awarded by the state court satisfactory. See *Sinclair Oil*, 96 F.3d at 405. Alternately, the state court may issue a writ of mandamus directing the City to approve VH's development plans, mooting VH's federal claims to the extent they seek redress for a permanent, rather than temporary, deprivation of property rights. See *C-Y Development*, 703 F.3d at 378. Accordingly, the court concludes that the second requirement for *Pullman* abstention is met.

### 3.   Whether Resolution of the State Law Issues is Uncertain

Whether resolution of the state law issues is uncertain is the main point of contention between the parties. VH argues that resolution of its state law claims is uncertain given the unique and factually specific nature of individual challenges to local governments' exercise of land use planning authority. It cites the Ninth Circuit's observation in *Sederquist* that:

> "Whether a city has abused its discretion by refusing to issue a building permit is by nature a question turning on the peculiar facts of each case in light of the many local and state-wide land use laws and regulations applicable to the area in question. We do not claim the ability to predict whether a state court would decide that the city here abused its discretion in declining to give the Sederquists permission to pave their access road." *Sederquist*, 590 F.2d at 282-83.

Relying on the local nature of land use claims, and the fact that they involve interpretation of various state and local land use laws, the Ninth Circuit has required only a minimal showing of uncertainty to satisfy the third *Pullman* factor in land use cases. In *Sinclair Oil*, the court held

that the third requirement was satisfied where plaintiff raised a "conventional inverse condemnation claim" that did not implicate any novel issues of statutory construction:

> "Finally, we find that the determinative issues of state law are uncertain.  To be sure, the conventional inverse condemnation claim advanced by Sinclair does not appear to be particularly extraordinary or unique, and Sinclair does not raise a novel claim of statutory interpretation.  Still, the Plan itself has not yet been challenged in the state courts.  In a somewhat similar case, this Court observed that a local government's enactment of land use regulations 'is by nature a question turning on the peculiar facts of each case in light of the many [applicable] local and state-wide land use laws. . . .'  *Santa Fe Land Improvement Co. v. City of Chula Vista*, 596 F.2d 838, 841 (9th Cir.1979) (quotation omitted)."

Defendants argue that, despite the Ninth Circuit's liberal application of this factor in land use cases, this action does not satisfy the third requirement for *Pullman* abstention.  In support, they cite the *Pearl* court's criticism of a liberal approach to the uncertainty requirement.  *Pearl*, 774 F.2d at 1465.  There, the district court abstained under *Pullman* in a case where plaintiff argued that the San Francisco City Planning Commission had abused its discretion by placing certain conditions on its approval of plaintiff's building permit application.  *Id*. at 1464.  The district court "reasoned that this circuit 'has taken the position that the resolution of state law questions is doubtful in virtually every case involving land use or zoning issues.'"  *Id*. at 1464-65 (quoting district court).  On appeal, the Ninth Circuit expressed its disapproval of prior circuit precedent applying the uncertainty requirement in land use cases:

> "An outcome is not 'doubtful' or 'uncertain' just because it turns on the facts of the particular case. . . .  [T]here is much force to Pearl's contention that the district court could have ascertained the established standards applied by the California courts in reviewing zoning decisions and accordingly should have applied those standards without deferring to state adjudication."  *Id*. at 1465.

The *Pearl* court noted, however, that it was bound to follow circuit precedent, and therefore upheld the district court's decision to abstain.  *Id*.  (observing that "[w]e do not write on a clean

slate" and citing *Sederquist*, 590 F.2d at 282-83, and *Santa Fe Land Improvement Co.*, 596 F.2d at 838). Defendants' reliance on *Pearl* as binding authority is thus unpersuasive. Ninth Circuit cases decided after *Pearl* have continued to require only a minimal showing of uncertainty in land use cases. See, e.g., *Sinclair Oil*, 96 F.3d at 405.

Defendants also argue that resolution of the state law issues in this case is not uncertain because VH has not actually applied for some of the permits that have allegedly been denied, and because the City approved one of the permits VH contends was denied.[17] VH's complaint alleges that it has applied for the permits in question, and that they have been denied, however.[18] Defendants these allegations, but their argument does not address the degree of uncertainty surrounding the underlying legal issues under California law. Additionally, defendants proffer no evidence in support of their claim.

The court thus examines whether there is uncertainty as to how the California courts would resolve VH's claim. VH principally contends that the City's requirement that it demonstrate a 1.5 safety factor on its property is unreasonable. The California Court of Appeal addressed a similar question in *Monks v. City of Rancho Palos Verdes*, 167 Cal.App.4th 263 (2008).[19] Plaintiffs in *Monks* were owners of vacant lots in an area of Rancho Palos Verdes zoned for single-family dwellings. *Id.* at 269. Based on concerns over landslides, the City imposed a moratorium on construction in the area of the lots. Although owners of undeveloped property were able to seek exclusion from the moratorium, the City toughened the criteria for exclusion while plaintiffs' application for an exception was pending. *Id.* Under the new criteria, an owner was required to

---

[17]Defendants also argue that the California courts have upheld the constitutionality of the view restoration ordinance that the City contends prohibits it from permitting VH to maintain ficus trees on its property, citing *Echevarrietta v. City of Rancho Palos Verdes*, 86 Cal.App.4th 472, 480-81 (2001). It is clear, however, that the ficus trees are not the central issue in VH's claims.

[18]Complaint, §§ 22-23.

[19]Like this case, *Monks* involved a geological study conducted by CSA. See 167 Cal.App.4th at 276. Tofani was the principal expert witness for the City in *Monks*. *Id.* at 278.

demonstrate the existence of a 1.5 safety factor[20] for the entire moratorium area.  Previously, the City had only required that an owner demonstrate a 1.5 safety factor for his individual lot.  *Id.* at 278-79.  Because it would have been impossible for an individual landowner to demonstrate a 1.5 safety factor for the entire moratorium area, rather for an individual lot, the court concluded that the exclusion criteria permanently prohibited development of plaintiffs' property.  *Id.* at 304-05.  It thus held that the City had effected a categorical taking of the property.  *Id.* at 305.

Apparently inspired by the *Monks* decision, VH argues that the City's requirement that VH demonstrate a 1.5 safety factor for its property is unreasonable.  There are significant differences between *Monks* and this case, however, making it uncertain how a California court would view VH's contentions.  *Monks* did not hold that requiring an individual landowner to show that its property satisfied a 1.5 safety factor was unreasonable.  Rather, the problem the court found with the City's regulations was that they required property owners to demonstrate that the entire area in which their property was situated met the safety factor.  See *id.* at 304-05.  The *Monks* plaintiffs claimed that they could meet a 1.5 safety factor for their particular lots.  *Id.*  Here, by contrast, VH appears to argue that it should not be held to a 1.5 safety factor even for the property it intends to develop.[21]  VH asserts that a 1.5 safety factor "is not necessary for safe development of [its] property," and that "the City has known for many years that [its] property is safe for the

_____

[20]As the *Monks* court explained, "safety factor" is "a geotechnical term used to explain the stability of a parcel of land . . . expressed as a number reflecting the relationship between the physical factors that cause instability and those that aid stability.  A safety factor of 1.0 indicates that the instability forces are equal to the stability forces, and the property is therefore considered 'barely stable or almost unstable.'  A safety factor of 1.5 means that the forces of stability are at least 50 percent greater than the forces that cause instability.  An area with a factor of safety greater than 1.0 is stable by definition.  Nevertheless, because a safety factor cannot be calculated with precision, a factor of at least 1.5 provides an important margin of error and is accepted as the standard factor of safety by geotechnical professionals for residential construction.  A smaller margin of error – a lower factor of safety – may be appropriate for construction if more is known about the geology of a particular area, for example, that the groundwater is under control."  *Monks*, 167 Cal.App.4th at 274.

[21]Pl.'s Mot. at 2.

10

purposes for which [it] has sought development approval."[22]  VH contends that substantial geological studies of its property have already been conducted.[23]  In part, it bases its argument on Cotton's testimony in *Monks* that a 1.5 safety factor is not necessary for safe construction where a 1.3 safety factor can be determined with certainty.[24]  VH's argument is consistent with the explanation given by the *Monks* court that while "a factor of at least 1.5. . . is accepted as a standard factor of safety by geotechnical professionals for residential construction," a lower safety factor "may be appropriate for construction if more is known of the geology of a particular area." See *id.* at 274.

Although VH does not explain why a safety factor below 1.5 is adequate for its property, it presumably believes that the geology of the property warrants a reduced safety factor requirement.  A California court considering this arugment will have to apply highly specialized scientific standards to the unique geological characteristics of VH's property.  Because a California court's decision will turn on the "peculiar facts" of the case, including the recent collapse of the eighteenth hole of VH's golf course into the ocean, the court cannot with confidence predict whether a California court would find that the City abused its discretion in holding VH to a 1.5 safety factor. See *Sederquist*, 590 F.2d at 282-83.

Under Ninth Circuit precedent addressing land use cases, this is sufficient to satisfy the uncertainty requirement for *Pullman* abstention. See *id.* ("Whether a city has abused its discretion by refusing to issue a building permit is by nature a question turning on the peculiar facts of each case in light of the many local and state-wide land use laws and regulations applicable to the area in question. We do not claim the ability to predict whether a state court would decide that the city here abused its discretion in declining to give the Sederquists permission to pave their access road"); see also *Sinclair Oil*, 96 F.3d at 405; *Pearl*, 774 F.2d at 1465; *Santa Fe Land Improvement Co.*, 596 F.2d at 838.

---

[22]*Id.*; Complaint, ¶ 26.

[23]Complaint, ¶ 27.

[24]*Id.*

1    Accordingly, the court finds that *Pullman* abstention is warranted.  Because permitting a

2    California court to determine the essentially local issues underlying VH's complaint may

3    potentially narrow the federal constitutional issues presented, the principles of comity and

4    federalism underlying *Pullman* support the court's decision to abstain.  See *C-Y Development*, 703

5    F.2d at 380 ("We are satisfied that the potential for . . . a narrowing of the constitutional issues

6    and the principles of comity that will be furthered by allowing the state courts to first pass on the

7    validity of this municipal ordinance under state law are sufficient 'countervailing interests' to

8    justify abstention in this case," quoting *County of Allegheny*, 360 U.S. at 188-89).

9          **C.    Whether the Court Should Stay or Remand the Federal Claims**

10    Having decided that it is appropriate to abstain under *Pullman*, the court must consider the

11    proper procedure to adopt with respect to VH's claims.  VH requests that the court remand the

12    entire case to state court.  The geologist defendants, by contrast, contend that the court should

13    remand only the state law claims, while retaining jurisdiction over, and staying, the federal

14    claims.

15    In general, "[i]f a court invokes *Pullman* abstention, it should stay the federal constitutional

16    question 'until the matter has been sent to the state court for a determination of the uncertain state

17    law issue.'"  *Pearl*, 774 F.2d at 1462 (quoting Erwin Chemerinsky, FEDERAL JURISDICTION,

18    § 12.2.1, at p. 737 (3d ed. 1999)); see also *Harrison v. NAACP*, 360 U.S. 167, 177 (1959) ("This

19    principle does not, of course, involve the abdication of federal jurisdiction, but only the

20    postponement of its exercise; it serves the policy of comity inherent in the doctrine of abstention;

21    and it spares the federal courts of unnecessary constitutional adjudication," citing *City of Chicago*

22    *v. Fieldcrest Dairies, Inc.*, 316 U.S. 168, 172-73 (1942)).  *Pullman* abstention is typically raised

23    by a defendant when plaintiff has filed in federal court, however.  Few courts have had the

24    opportunity to consider what a district court should do when it decide to abstain under *Pullman*

25    in a case removed by defendant from state court.

26    The only case in this circuit the court can identify that has considered such a question is

27    *Ganz v. Belvedere*, 739 F.Supp. 507 (N.D. Cal. 1993).  There, the court observed that invocation

28    of *Pullman* abstention in a case removed by defendant to federal court is unusual.  *Id*. at 509

1   ("Whether the Court, pursuant to abstaining under *Pullman*, should remand the federal claims in

2   plaintiff's removed complaint presents a question not heretofore addressed.  Courts have invoked

3   *Pullman* abstention in many cases in which the plaintiff has initially brought suit in federal court,

4   but this Court has not located a case where a court has abstained under *Pullman* following removal

5   of the action from state court.  Conventionally, in cases filed initially in federal court, a court

6   finding *Pullman* abstention appropriate stays the federal action pending adjudication of the state

7   issues in state court, and retains jurisdiction over the federal claims").  The court noted that

8   typically, when a defendant invokes *Pullman* abstention, "the plaintiff may . . . return to federal

9   court [after state court adjudication of the state law issues] to have his federal claims decided if

10  they have not been mooted by the state proceeding."  *Id.*  In cases removed from state court,

11  however, the court concluded that it was proper to remand after deciding to abstain under

12  *Pullman*.  It explained:

> "[I]f the plaintiff in the action at bar had filed his complaint in federal court, the
> Court would abstain, stay the action pending determination of the state law issues,
> retain jurisdiction, and the plaintiff would be required to initiate a state proceeding
> to have his state claims adjudicated.  Plaintiff, however, filed his complaint in state
> court and defendants then removed.  It, thus, seems inequitable for the Court now,
> because it finds abstention appropriate, merely to stay the action and not remand
> because such action would require plaintiff to initiate yet another state lawsuit.
> Defendants, however, complain that if the Court were to remand the entire action
> to state court, they would lose their statutory right under 28 U.S.C. § 1441(b) to
> have plaintiff's federal claims adjudicated by a federal district court.  The Court,
> however, does not consider remand of the entire action, including plaintiff's federal
> claims, to foreclose defendants' right because defendants may preserve their right
> to federal district court adjudication of plaintiff's federal claims by making a
> reservation on the state court record.  [*England v. Louisiana State Board of*

13

1   *Medical Examiners*, 375 U.S. 411, 421(1964)].[25] The Supreme Court has

2   expressly provided that a defendant may make an *England* reservation to preserve

3   its right to litigate federal claims in federal district court. *Id.* at 422 n. 13. . . .

4   Therefore, the Court finds that remanding plaintiff's federal claims will not forclose

5   defendants' right to federal court adjudication of those claims if defendants make

6   the necessary *England* reservation on the state court record.   Accordingly, the

7   Court finds remand of the entire action proper." *Id.* at 510.

8       The court does not find *Ganz*'s reasoning persuasive.   *Ganz* concluded that it would be

9   "inequitable" not to remand the entire action, because retaining jurisdiction and staying the case

10  would "require [the] plaintiff to initiate yet another state lawsuit." *Id.*   The court appears to have

11  considered remand of the entire case or retention of jurisdiction over the entire case the only

12  options available to it; it does not appear to have considered remanding only the state law claims.

13  In federal question cases, the district court has discretion to decline to exercise supplemental

14  jurisdiction over related state law claims.   See *United Mine Workers of America v. Gibbs*, 383

15  U.S. 715, 726 (1966) ("Th[e] power [to hear related state law claims in a federal question case]

16  need not be exercised in every case in which it is found to exist.   It has consistently been

17  recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right.   Its

18  justification lies in considerations of judicial economy, convenience and fairness to litigants; if

19

20      [25]To make an *England* reservation, a party must inform the state court that he "intends,

21  should the state courts hold against him on the question of state law, to return to the District Court
    for disposition of his federal contentions." *England*, 375 U.S. at 421.   The Court explained that

22  "[t]he reservation may be made by any party to the litigation.   Usually the plaintiff will have made
    the original choice to litigate in the federal court, but the defendant also, by virtue of the removal

23  jurisdiction, 28 U.S.C. s 1441(b), has a right to litigate the federal question there.   Once issue has
    been joined in the federal court, no party is entitled to insist, over another's objection, upon a

24  binding state court determination of the federal question.   Thus, while a plaintiff who unreservedly

25  litigates his federal claims in the state courts may thereby elect to forgo his own right to return
    to the District Court, he cannot impair the corresponding right of the defendant.   The latter may

26  protect his right by either declining to oppose the plaintiff's federal claim in the state court or

27  opposing it with the appropriate reservation.   It may well be, of course, that a refusal to litigate
    or a reservation by any party will deter the state court from deciding the federal question." *Id.*

28  at 422 n. 3.

1  these are not present a federal court should hesitate to exercise jurisdiction over state claims, even

2  though bound to apply state law to them" (citations and footnote omitted)).

3         Applying the factors identified in *United Mine Workers*, the district court has discretion,

4  when a case is removed from state court on the basis of federal question jurisdiction, to retain

5  jurisdiction over the federal claims and remand the state law claims.  See *Emrich v. Touche Ross*

6  *& Co.*, 846 F.2d 1190, 1196 (9th Cir. 1988) (citing *Carnegie-Mellon Universtiy v. Cohill*, 484

7  U.S. 343, 348 (1988), and *United Mine Workers*, 383 U.S. at 725).  There is no reason why a

8  similar option to remand only the state law claims is not available when a district court abstains

9  in a removed federal question case under *Pullman*.  Similar values guide a district court's exercise

10  of discretion to decline supplemental jurisdiction over state law claims and its discretion to abstain

11  under *Pullman*; both doctrines are based in part on concerns of comity and federalism.  Compare,

12  e.g., *Carnegie-Mellon*, 484 U.S. at 350 ("Under *Gibbs*, a federal court should consider and weigh

13  in each case, and at every stage of the litigation, the values of judicial economy, convenience,

14  fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that

15  court involving pendent state-law claims") with  *Pearl Investment Co.*, 774 F.2d at 1462 (courts

16  should abstain under *Pullman* only "where principles of comity and federalism justify postponing

17  the exercise of jurisdiction that Congress conferred upon federal courts").  Indeed, when the

18  district court concludes that it is appropriate to abstain under *Pullman*, the state law claims at that

19  point predominate, and are properly remanded to state court.  See, e.g., *Cingular Wireless, LLC*

20  *v. Thurston County*, 150 Fed. Appx. 633, 636 (9th Cir. Sept. 26, 2005) (Unpub. Disp.)

21  ("Although the district court did not dismiss the federal claims over which it had original

22  jurisdiction, its decision to stay these claims pending resolution of the LUPA claims in state court

23  most likely explains its decision to decline the exercise of supplemental jurisdiction over the state

24  claims").

25         Further, *Ganz*'s approach is counter to the principle that *Pullman* abstention "does not. . .

26  involve the abdication of federal jurisdiction, but only the postponement of its exercise."

27  *Harrison*, 360 U.S. at 177; see also *Kollsman*, 737 F.2d at 833 (*Pullman* abstention "is a narrow

28  exception to the district court's duty to decide cases properly before it").  While it is true that

defendants could protect their right to return to litigate the federal claims in a federal forum by placing an *England* reservation on the state court record, the court sees no need to place defendants, or the state court, in such a position because it can retain jurisdiction over the federal claims and remand only the state claims.[26]

For these reasons, the court concludes that it should retain jurisdiction over VH's federal claims, and remand only the state law claims to state court.[27]

---

[26]The situation in *England* was distinct from that which confronts this court. Plaintiffs in *England* filed suit originally in district court. See *England*, 375 U.S. at 412. After the federal court abstained, plaintiffs filed suit in state court, pleading both their federal and state law claims because they believed they were required to do so under *Government & Civic Employees Organizing Committee, C.I.O. v. Windsor*, 353 U.S. 364 (1957). *England*, 375 U.S. at 412-13. Both federal and state law claims were resolved by the state court. *Id.* at 413. When plaintiffs returned to federal court to litigate their federal claims, the court dismissed the claims as having been already adjudicated. *Id.* at 414-15. After noting that "the parties [could not ] prevent the state court from rendering a decision on the federal question if it cho[se] to do so," *id.* at 421, the Supreme Court fashioned the *England* reservation to preserve the party's election to have the federal claims decided in federal court. In the instant case, of course, the court can avoid the appearance of suggesting to the state court that it should resolve the federal claims, and obviate the necessity for defendants to make an *England* reservation in state court simply by retaining jurisdiction over the federal claims and remanding only the state law claims that, in the face of the decision to abstain under *Pullman*, predominate.

[27]Because the court has concluded that *Pullman* abstention is appropriate, it does not reach VH's argument that *Burford* abstention applies. The court notes, however, that it does not believe this is an appropriate case for *Burford* abstention. "*Burford* abstention is appropriate where a case involves an unclear state law question of vital local concern, which must be addressed though a centralized unified state administrative system." *Friends of East Lake Sammamish Trial v. City of Sammamish*, 361 F.Supp.2d 1260, 1275 (W.D. Wash. 2005) (citing *Burford v. Sun Oil Company*, 319 U.S. 315, 332 (1943). The Ninth Circuit has often found *Burford* abstention inappropriate in land use cases. See *International Brotherhood of Electrical Workers, Local Union No. 1245 v. Public Service Commission of Nevada*, 614 F.2d 206, 211 (9th Cir. 1980) ("This circuit has been careful to avoid extending *Burford*. In three recent cases, this court held *Burford* abstention inapplicable to cases challenging zoning regulations or land use plans. *Isthmus Landowners Association v. California*, 601 F.2d 1087 (9th Cir. 1979); *Santa Fe Land Improvement Co. v. City of Chula Vista*, 596 F.2d 838 (9th Cir. 1979); *Rancho Palos Verdes Corp. v. City of Laguna Beach*, 547 F.2d 1092 (9th Cir. 1976). Although zoning and land use schemes may be complex and are essentially local issues, we found *Burford* inapplicable in those cases for two reasons. First, the State had not chosen to concentrate such suits in any particular court, whereas in *Burford*[,] Texas had confined challenges to orders of the regulatory commission

1

### III.  CONCLUSION

2      For the reasons stated, the court grants VH's motion to remand as to its state law claims

3  only.  The court remands the following causes of action to state court: the first cause of action for

4  inverse condemnation (regulatory taking), to the extent it relies on state law; the second cause of

5  action for taking of property for public use without just compensation, to the extent it relies on

6  state law; the fourth cause of action for violation of due process under the California Constitution;

7  the sixth cause of action for violation of equal protection under the California Constitution; the

8  seventh cause of action for fraud; the eighth cause of action for breach of contract; the ninth cause

9  of action for breach of the implied covenant of good faith and fair dealing; the tenth cause of

10  action for unjust enrichment; the eleventh cause of action for intentional interference with

11  prospective economic advantage; the twelfth cause of action for unfair business practices; and the

12  thirteenth cause of action for mandamus.  The court retains jurisdiction over and stays the

13  following claims: the first cause of action for inverse condemnation (regulatory taking), to the

14  extent it relies on federal law; the second cause of action for taking of property for public use

15  without just compensation, to the extent it relies on federal law; the third cause of action for

16  violation of due process under the U.S. Constitution; and the fifth cause of action for violation

17  of equal protection under the U.S. Constitution.  The court stays the federal claims pending

18  ────────────────

19  to the district court of a single county to provide specialized and uniform adjudication.  Second,
    we suggested that *Burford* abstention is inappropriate in cases in which federal issues easily could
20  be separated from state law issues with respect to which the state courts might have special
    competence"); see also *C-Y Development*, 703 F.2d at 381 (holding that *Burford* abstention was
21  inappropriate in a land use case in which *Pullman* abstention was appropriate, citing *International*
    *Brotherhood*, 614 F.2d 211-12).

22
           California has not concentrated claims like VH's in any particular court.  VH argues that
23  "[b] statute, California has designated a single court, the Superior Court for Los Angeles County,
    as the sole forum for claims of a regulatory taking of property within the City of Rancho Palos
24  Verdes, or for a determination of any right or interest in such real property, or for any claim
    arising from an injury to such property," citing California Code of Civil Procedure §§ 392(a) and
25  1250.020(a).   (Pl.'s Mot. at 12.)   VH's argument is based on California's general venue
    provisions, however.  These applied equally in prior cases in which the Ninth Circuit concluded
26  that, for *Burford* purposes, California had not chosen to concentrate land use challenges in any
    particular court.  See, e.g., *Santa Fe Land Improvement Co.*, 596 F.2d at 841-42; *Rancho Palos*
27  *Verdes Corp.*, 547 F.2d at 1096.

28

1    resolution of the state law claims in state court.  The parties are directed to notify the court within

2    ten days of any decision on those claims by the state court.

3

4    DATED: March 23, 2009                                                    _____

5                                                                                           MARGARET M. MORROW
                                                                                            UNITED STATES DISTRICT JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28